# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY
# NEWARK VICINAGE

## K.W., and M.W., Plaintiffs,
### v.
## RINGWOOD BOARD OF EDUCATION, Defendant

## Civil Action No. 2:24-cv-08293-JXN-MAH

## PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD
## (Prb1-10)

Jamie Epstein, Esq. (Bar ID No. 008081990)
17 Fleetwood Drive
Hamilton, New Jersey 08609
Tel: 856-979-9925
Email: JE@JamieEpsteinLaw.com
Attorney for Plaintiffs K.W. and M.W.
Dated: April 3, 2026

**TABLE OF CONTENTS**

Preliminary Statement..................................................................................................1

Argument.....................................................................................................................3

I. THE BOE'S RESPONSE TO PLAINTIFF'S SUMF CONTAINS
ADMISSIONS UNDERMINING ITS ARGUMENTS.............................................3

II. THE BOE MISCHARACTERIZES THE IDEA'S HEARING
REQUIREMENT AND THE ROLE OF SUMMARY DECISION.........................4

III. THE BOE'S WAIVER THEORY CANNOT EXTINGUISH COVID-
ERA CLAIMS OR STAY-PUT OBLIGATIONS......................................................6

IV. SUMMARY DECISION WAS IMPROPER BECAUSE
MATERIAL FACTS ARE DISPUTED..................................................................9

Conclusion................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)............................................4, 9

Chafin v. Chafin, 568 U.S. 165 (2013)...............................................................8

Honig v. Doe, 484 U.S. 305 (1988).....................................................................6

M.R. v. Ridley Sch. Dist., 744 F.3d 112 (3d Cir. 2014).............................................6

**Administrative Authority**

Letter to Zirkel, 122 LRP 14165 (OSEP Apr. 15, 2022)............................................4

**Statutes and Regulations**

**Federal**

20 U.S.C. § 1414(a)(1)(D)(ii)(III)..................................................................6

20 U.S.C. § 1415(f)(1)(A)............................................................................4

20 U.S.C. § 1415(h).................................................................................4

20 U.S.C. § 1415(j)..................................................................................6

34 C.F.R. § 300.300(d)(3)...........................................................................6

34 C.F.R. § 300.508(d)..............................................................................4

**New Jersey**

N.J.A.C. 1:1-1.1.....................................................................................5

N.J.A.C. 1:1-12.5...................................................................................5

N.J.A.C. 1:6A-1.1...................................................................................5

N.J.S.A. 18A:46-1.3..................................................................................7

**PRELIMINARY STATEMENT**

Ringwood's Brief in Opposition [ECF 101] and its accompanying Response to Plaintiff's Statement of Undisputed Material Facts [ECF 102] affirms, rather than refutes, the existence of many fundamental defects in the Administrative Law Judge's decision. Ringwood does not dispute that:

(1) M.W. was entitled to FAPE during the COVID-19 school shutdown [ECF 102 ¶9];

(2) M.W. remained in statutory stay-put [ECF 102 ¶11];

(3) N.J.S.A. 18A:46-1.3 imposed an affirmative obligation to determine whether compensatory education was required [ECF 102 ¶16]; and

(4) the parties dispute whether M.W.'s IEP was fully implemented during the COVID-19 shutdown [ECF 102 ¶22].

Instead, Ringwood advances a single legal theory: that a 2021 reevaluation ruling permanently extinguished all future denial-of-FAPE claims, including claims arising from the Ringwood BOE's failure to implement M.W.'s statutorily-mandated stay-put IEP during an unprecedented statewide school shutdown that occurred afterward. In other words, Ringwood's untenable position, which they request this court to affirm, is that during the COVID school closure, despite receiving federal funds to do so provide its special education students with the education they needed to make meaningful progress, it was given a free pass to neither implement M.W.'s stay-put IEP that had

already been in place nor provide him with any compensatory education for the time it failed to comply with state and federal law.

That theory finds no support in the IDEA or in New Jersey law, including, but not limited to New Jersey's post-COVID compensatory education statute N.J.S.A. 18A:46-1.3, or in the administrative record. The BOE's own response to Plaintiffs' Statement of Undisputed Material Facts admits that material factual disputes exist regarding implementation of M.W.'s IEP, provision of services during COVID, and the adequacy of the District's compensatory-education process. [ECF 102 ¶¶22–26]. The only Undisputed Material Facts here arise from the months where Ringwood was closed or partially closed for COVID making it impossible to implement M.W.'s IEP. Those admissions alone foreclose summary disposition. More fundamentally, the ALJ dismissed the Plaintiffs' due process petition without conducting the live hearing required by federal law and without adjudicating the claim that was the sole subject of the petition.

Because the Ringwood BOE's Opposition rests on a mischaracterization of waiver doctrine, ignores the N.J.S.A. 18A:46-1.3 statutory framework enacted in response to the COVID-19 shutdown, and concedes the existence of disputed material facts, the July 7, 2024 Final Decision must be reversed and the matter remanded for a full evidentiary hearing.

## ARGUMENT

### I. THE BOE'S RESPONSE TO PLAINTIFF'S SUMF CONTAINS ADMISSIONS UNDERMINING ITS ARGUMENTS.

Ringwood's Response [ECF 102] to Plaintiffs' SUMF [ECF 97] is dispositive of this appeal. While styled as a response, it contains multiple admissions of material facts still in dispute that directly undermine the ALJ's summary dismissal, as well as others that render its own arguments false.

First, the BOE admits that from March 18, 2020 through September 1, 2021, M.W. was entitled to FAPE and that Ringwood was obligated to implement his operative IEP during that period. [ECF 102 ¶¶9–11]. This admission is fatal to the Board's waiver theory. Stay-put obligations are absolute and are not contingent on reevaluation consent.

Second, the BOE admits that Plaintiffs alleged— and the District disputes—that M.W.'s IEP was not implemented during the COVID-19 shutdown. [ECF 102 ¶22]. That admission alone establishes a genuine dispute of material fact precluding summary decision.

Third, the BOE admits that it convened a compensatory-education meeting without the parents and unilaterally determined that no compensatory education was required. [ECF 102 ¶16]. Whether that process complied with N.J.S.A. 18A:46-1.3 is a merits question that cannot be resolved on summary decision. Furthermore, the BOE admits that the parties remain in dispute as to whether the parents received an invitation to participate in this meeting as required by statute [ECF 102 ¶24].

Fourth, the BOE admits that the parties remain in dispute as to whether a 1:1 aide was provided or offered during the COVID-19 shutdown. [ECF 102 ¶23]. The presence or absence of mandated supports is directly relevant to denial-of-FAPE and compensatory-education determinations, again precluding a summary decision.

Finally, the BOE concedes that the relevance and scope of the prior 2021 OAL decision and the 2024 federal dismissal are themselves disputed. [ECF 102 ¶25].

These admissions demonstrate that the ALJ did not resolve a "pure question of law." Rather, the ALJ short-circuited a fact-intensive COVID compensatory-education claim by importing findings from unrelated proceedings involving different issues and time periods. Ringwood BOE confirmed that all of these facts, each material to the matter at hand, remained in dispute at the time the summary decision at issue was delivered. Under Rule 56, the existence of such disputes precludes summary disposition as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

## II. THE BOE MISCHARACTERIZES THE IDEA'S HEARING REQUIREMENT AND THE ROLE OF SUMMARY DECISION

Ringwood argues that the IDEA permits dismissal without a hearing whenever a claim is "procedurally barred", and that even if the IDEA precluded summary decision at the administrative level, an ALJ can override federal law in favor of their own conclusions of law  [ECF 101, pp. 7-9]. Unsurprisingly, this notion is rejected at both the state and federal level.

The IDEA provides that once a due process complaint is filed, the parties "shall have an opportunity for an impartial due process **hearing**." (emphasis added) 20 U.S.C. § 1415(f)(1)(A). Summary decision violates parents' rights under the IDEA to participate in a due process hearing, to present evidence and to compel and examine witnesses—all procedural safeguards necessary to resolve the number of material facts presently in dispute, as well as whether the present matter is, as the Ringwood BOE claims, moot. 20 U.S.C. § 1415(f)(1)(A); 20 U.S.C. §1415(h). The only expressly authorized mechanism for early dismissal is a timely sufficiency challenge filed within fifteen days. 34 C.F.R. § 300.508(d). Ringwood concedes that no sufficiency challenge was filed. [ECF 102 ¶20].

In a formal guidance letter published "to provide clarity to the public regarding existing requirements under the law or agency policies", *Letter to Zirkel*, 122 LRP 14165 (OSEP Apr. 15, 2022), the U.S. Department of Education's Office of Special Education Programs ("OSEP") explained that the IDEA does not authorize hearing officers to dismiss due process complaints or resolve them without a hearing except through a timely sufficiency challenge or with the parties' mutual consent. (Pa143, 145-46).  The Ringwood BOE's position—and the ALJ's ruling—cannot be reconciled with that interpretation of the IDEA.

The ALJ's reliance on N.J.A.C. 1:1-12.5 cannot override federal law. Where special education law, as promulgated under the IDEA and N.J.A.C. §1:6A, contradicts

Prb-5

the Uniform Administrative Procedure Rules, the special education law applies. N.J.A.C. 1:1-12.5, which allows for summary decision in administrative proceedings, is a section of the Uniform Administrative Procedure Rules, and as such is explicitly "[s]ubject to any superseding Federal or State law. . ." N.J.A.C. 1:1-1.1. N.J.A.C. §1:6A-1.1(a) likewise states that "[t]o the extent that these rules are inconsistent with the [Uniform Administrative Procedure Rules], these rules shall apply." *Id*. Because Chapter 1:6A implements the IDEA's hearing mandate, thereby superseding any provisions of New Jersey's U.A.P.R. that are contradictory or even "inconsistent" with special education requirements, the ALJ was required to apply it instead of the general summary-decision rule in N.J.A.C. 1:1-12.5. An ALJ may not apply a state procedural rule in a manner that nullifies federal procedural safeguards guaranteed by the IDEA.

The BOE's March 27, 2026 refiled opposition [ECF 101] raises no new legal arguments and confirms that the case continues to turn on disputed facts admitted in its own SUMF response [ECF 102].

### III. THE BOE'S WAIVER THEORY CANNOT EXTINGUISH COVID-ERA CLAIMS OR STAY-PUT OBLIGATIONS

Ringwood's core argument is that a 2021 reevaluation-consent ruling permanently bars all denial-of-FAPE claims arising after November 27, 2019. [ECF 101 at pp.10–14]. That reading overstates the scope of the 2021 Order, misapplies the IDEA's consent

provisions, and ignores the independent statutory and stay-put obligations at issue in this case.

The September 24, 2021 Order stated that, so long as the parents withheld consent for evaluations, they "will have waived their rights to challenge the District's placement and programming for M.W., or otherwise allege that the District's placement and programming for M.W. failed to provide a FAPE at any time after November 27, 2019." (Pa117). Properly read, that language addressed challenges to placement and programming in the context of the evaluation dispute then before the ALJ. It did not terminate stay-put, did not relieve the District of its obligation to implement the existing IEP, and did not adjudicate future statutory compensatory-education claims arising from an unprecedented statewide school shutdown.

The IDEA's consent provisions confirm this distinction. Where a parent refuses consent for certain evaluations or services, the district "shall not be considered to be in violation" for failing to provide the specific services for which consent was requested. 20 U.S.C. § 1414(a)(1)(D)(ii)(III). That provision does not authorize a district to suspend implementation of an existing IEP under stay-put, nor does it excuse noncompliance with independent statutory obligations imposed after the 2021 Order.

Indeed, the BOE acknowledges that "[d]uring the pendency of proceedings … M.W. was in stay-put" and that it was "obligated to maintain M.W.'s then-current

Prb-7

educational placement including his then-current IEP." [ECF 102 ¶11]. That obligation applied "[a]t all times relevant to the present litigation." [ECF 102 ¶10]. Under 20 U.S.C. § 1415(j), stay-put requires implementation of the existing IEP during the pendency of proceedings, regardless of ongoing disputes.

Under 20 U.S.C. § 1415(j), stay-put requires the District to maintain and implement M.W.'s then-current educational placement during the pendency of proceedings. *See Honig v. Doe,* 484 U.S. 305, 323 (1988); *M.R. v. Ridley Sch. Dist.,* 744 F.3d 112, 117–19 (3d Cir. 2014). Moreover, a parent's refusal to consent to certain evaluations does not authorize a district to deny other services or suspend implementation of an existing IEP. See 20 U.S.C. § 1414(a)(1)(D)(ii)(III); 34 C.F.R. § 300.300(d)(3).

Further, the waiver language cannot be read to extinguish claims arising under N.J.S.A. 18A:46-1.3, which was enacted to address COVID-related service loss and requires districts to determine whether compensatory education is owed. Nothing in the 2021 Order adjudicated compliance with that statute. Nor may a court expand the scope of a prior order by implication. A judicial order must be construed in light of the issues actually before the tribunal at the time. *See, e.g., Honig v. Doe,* 484 U.S. 305, 323 (1988) (emphasizing the mandatory nature of stay-put protections pending proceedings).

Prb-8

At bottom, Ringwood's theory would convert a consent dispute over evaluations into a permanent immunity from future accountability for implementation failures—even during a later statewide emergency. The IDEA does not authorize such a result, and the 2021 Order does not compel it.

Waiver, even if assumed *arguendo*, does not render a live controversy "moot." Mootness concerns whether there remains a concrete dispute capable of judicial resolution; it is not created by a party's assertion of a procedural defense. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (a case is moot only when it is "impossible for a court to grant any effectual relief whatever"). Here, Plaintiffs seek compensatory education for alleged denial of FAPE during the COVID-19 shutdown and for failure to comply with N.J.S.A. 18A:46-1.3. That relief remains available and unadjudicated. A purported waiver defense may affect the merits, but it cannot extinguish Article III jurisdiction or convert a fact-intensive compensatory-education claim into a moot case.

## IV. SUMMARY DECISION WAS IMPROPER BECAUSE MATERIAL FACTS ARE DISPUTED

Even under traditional summary-judgment principles, the ALJ's summary decision was issued in error. Ringwood admits that the parties dispute implementation of the IEP, provision of a 1:1 aide, parental participation in the compensatory-education process, and the relevance of prior decisions. [ECF 102 ¶¶22–26].

Where disputed facts could affect a case's outcome under governing law, summary decision is prohibited. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The ALJ erroneously issued a final decision without resolving these disputes.

**CONCLUSION**

Ringwood's opposition [ECF 101] and its response to Plaintiffs' SUMF [ECF 102] confirm that the ALJ dismissed a fact-intensive COVID compensatory-education claim without the hearing required by law and without adjudicating the governing statute. Because the Final Decision rests on legal error and the absence of an evidentiary record, Plaintiffs respectfully request that the Court grant their Motion for Judgment on the Administrative Record, reverse the July 7, 2024 Final Decision, and remand this matter to the Office of Administrative Law for a full evidentiary due process hearing.

Respectfully submitted on 4/3/26,

Jamie Epstein, ESQ.
Attorney for Plaintiffs

Prb-10