**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| K.W., <br><br>       **Plaintiff,** <br><br>    v. <br><br> **RINGWOOD BOARD OF EDUCATION** <br> **d/b/a RINGWOOD SCHOOL DISTRICT,** <br><br>       **Defendant.** | **Civil Action No. 24-8293 (MAH)** <br><br><br> **OPINION & ORDER** |

## I.   INTRODUCTION

Presently before the Court are the cross-summary judgment motions by Plaintiff K.W. ("K.W." or "Plaintiff"),[1] and Defendant Ringwood Board of Education d/b/a Ringwood School District ("Defendant" or "Ringwood").[2]  The Court has considered the parties' submissions in connection with the cross-motions.[3]  Additionally before the Court is the motion by Plaintiff's counsel to withdraw as attorney.  Mot. to Withdraw, Apr. 28, 2026, D.E. 105.  The Undersigned has considered this matter without oral argument.  Fed. R. Civ. P. 78; Local Civ. R. 78.1.  For the

---

[1]  Plaintiff's Local Civil Rule 56.1 Statement of Facts ("Pl.'s Statement of Facts") additionally names G.W., the child's other parent, as a plaintiff-appellant.  Pl.'s Statement of Facts, D.E. 97-2 ¶ 3.  However, the Complaint and subsequent court filings seemingly refer only to K.W. as the Plaintiff.  *See* Compl., Aug. 5, 2024, D.E. 1 ¶ 5.  Additionally, Plaintiff's motion states that K.W. is appearing "on behalf of M.W."  *See* D.E. 97, at 1.  But it appears that M.W. has never formally been a plaintiff in this case.  Therefore, this Opinion refers only to K.W. as the Plaintiff.  To the extent the parties are quoted, any references to "Plaintiffs" are retained.

[2]  On December 10, 2024, the parties consented to the Undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  *See* D.Es. 29 & 30.

[3]  Specifically, the Court has considered the following:  Pl.'s Mot. for Summ. J., Mar. 13, 2026, D.E. 97; Def.'s Mot. for Summ. J., Mar. 13, 2026, D.E. 99.  Both motions were opposed, and both parties replied.  Pl.'s Opp'n, Mar. 14, 2026, D.E. 100; Def.'s Opp'n, Mar. 27, 2026, D.E. 101; Pl.'s Reply, Apr. 3, 2026, D.E. 104; Def.'s Reply, Mar. 30, 2026, D.E. 103.

reasons set forth below, Plaintiff's motion for summary judgment is **GRANTED**, Defendant's motion is **DENIED**, and Plaintiff's counsel's motion to withdraw is **DENIED AS MOOT**.

## II.    BACKGROUND

This matter involves a dispute under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, between Ringwood and K.W., the parent of a minor child, M.W., who requires special education services.  Plaintiff appeals a July 2024 New Jersey Office of Administrative Law ("OAL")[4] decision that summarily dismissed Plaintiff's due process petition.  Plaintiff alleges that Defendant failed to implement M.W.'s Individualized Education Program ("IEP") during the COVID-19 pandemic, thus denying M.W. the Free Appropriate Public Education ("FAPE") that the IDEA requires.  Plaintiff further asserts that Defendant improperly determined, without parental consent, that M.W. did not need compensatory services.

### a.  Factual History

During the time of the events in Plaintiff's Complaint, M.W. was a student in the Ringwood school district who was eligible for special education and related services, under the category of Other Health Impairment ("OHI").  Compl. ¶¶ 3-4; Pl.'s Statement of Facts ¶ 1-2; Defendant's Counter Statement of Material Facts ("Def.'s Counter Statement"), D.E. 102 ¶ 1-2. Defendant is a local education agency ("LEA") as defined by the IDEA.  Pl.'s Statement of Facts ¶ 6; Def.'s Counter Statement ¶ 6.  M.W. attended schools within Defendant's district until the 2021-2022 school year.  Pl.'s Statement of Facts ¶ 5; Def.'s Counter Statement ¶ 5.  Defendant serves students until eighth grade.  Pl.'s Statement of Facts ¶ 8; Def.'s Counter Statement ¶ 8.

---

[4]  Under the IDEA and New Jersey regulations, IEP disputes between parents of a disabled child and the school are to be resolved through due process hearings before an Administrative Law Judge ("ALJ") of the OAL.  *See* 20 U.S.C. § 1415(a); N.J.A.C. 6A:14-2.7.

Thereafter, Ringwood students may attend Lakeland Regional High School, which M.W. attended for ninth and tenth grade.  Pl.'s Statement of Facts ¶¶ 4, 8; Def.'s Counter Statement ¶¶ 4, 8.

At all times relevant to this case, including from March 18, 2020 to September 1, 2021, Defendant was obligated to implement an IEP for M.W.  Pl.'s Statement of Facts ¶ 9-10; Def.'s Counter Statement ¶ 9-10.  For reasons that will be explained in more detail below, M.W.'s IEP was in a "stay-put" status as of January 13, 2020, meaning Defendant was required to maintain M.W.'s then-current IEP in his then-current educational placement.  Pl.'s Statement of Facts ¶ 11; Def.'s Counter Statement ¶ 11.

On June 2, 2021, Ringwood held an IEP meeting for M.W.  Three Ringwood employees attended the IEP meeting.  D.E. 96-7, at AR324.[5]  The Court gleans from the record that the stated purpose of this meeting was to discuss whether M.W. needed "compensatory education" based on in-person instructional time lost during the COVID-19 pandemic.  *Id.*  Ringwood asserts it sent three emails notifying the parents of this meeting, but that "[t]he IEP team did not receive a response from the parent."  *Id.*  Because the IEP team determined that M.W. was satisfactorily progressing on IEP goals and objectives, the team decided not to offer

---

[5]  The portion of the administrative record at D.E. 97-1 is the portion Plaintiff considered relevant and thus cited in the briefs.  The entire administrative record was also filed under seal at D.E. 96.  For ease of reference, the Court primarily cites to D.E. 97-1.  Some documents within D.E. 97-1 contain multiple page numbers.  For example, D.E. 97-1, at 51, which is the second page of Ringwood's answer to the due process petition, contains "2," "12a," and "ADM. REC. 51" in the footer.  Because this document is on page 51 of D.E. 97-1, the Court will use the number associated with the "ADM. REC." designation located in the bottom right-hand corner of each page and ignore all other page designations.  Similarly, for citations to D.E. 96, the Court will use the page numbers associated with the "AR" number in the bottom right-hand corner of each page.

compensatory services. *Id.* It does not appear that any changes were made to M.W.'s IEP at this meeting. *See id.*

The New Jersey Legislature, recognizing that the COVID-19 pandemic had the potential to impact the ability of students with disabilities to receive a FAPE, enacted N.J.S.A. 18A:46-1.3. The statute, effective March 3, 2022, and retroactive to March 18, 2020, required LEAs to hold IEP meetings to determine if children with disabilities needed compensatory education and services to make up for in-person services lost during the COVID-19 pandemic. N.J.S.A. 18A:46-1.3(a). Plaintiff alleges that Defendant failed to notify Plaintiff when M.W.'s compensatory IEP meeting took place. Compl., D.E. 1 ¶ 19. Plaintiff also alleges that the parents incurred out-of-pocket expenses for compensatory services for M.W. during the COVID-19 pandemic. *Id.* ¶ 21. On August 31, 2023, Plaintiff filed a due process petition with the New Jersey Department of Education. Pl.'s Statement of Facts ¶ 12; Def.'s Counter Statement ¶ 12.

### b. Administrative Proceedings

#### i. Ringwood's Prior 2020 Due Process Petition

The parties dispute whether the outcome of the 2020 due process petition bears any weight on the instant litigation. Because the Administrative Law Judge ("ALJ") in the instant matter relied on the outcome of the 2020 due process petition to summarily dismiss Plaintiff's 2023 due process petition underlying the instant matter, the Undersigned summarizes the prior administrative proceeding here.

On January 14, 2020, Ringwood filed a due process petition with New Jersey's Office of Special Education Programs ("OSEP"). *Ringwood Bd. of Educ. v. K.W.*, No. EDS 02167-20, 2021 WL 8322401, at *1 (N.J. Adm. Sept. 24, 2021). OSEP transmitted the petition to the OAL, which assigned ALJ Jude Anthony Tiscornia to the matter. *Id.* On August 13, 2021, Ringwood

4

filed a motion for summary decision. *Id.* ALJ Tiscornia found the following facts:  the last time Ringwood conducted evaluations was during the 2015-2016 school year, Ringwood requested consent from the parents to re-evaluate M.W. in November 2019, and, despite multiple attempts at obtaining consent, the parents refused to consent to Ringwood's plan to reevaluate M.W. *Id.*

The ALJ agreed that under the New Jersey Administrative Code, Ringwood had a legal right to reevaluate M.W. *Id.* at *3 (quoting N.J.A.C. 6A:14-3.8(a) ("Within three years of the previous classification, a multi-disciplinary reevaluation shall be completed to determine whether the student continues to be a student with a disability.")).  The ALJ also agreed that Ringwood needed parental consent before reevaluating M.W. *Id.* (quoting N.J.A.C. 6A:14-3.8(c) ("Prior to conducting any assessment as part of a reevaluation of a student with a disability, the district board of education shall obtain consent from the parent pursuant to N.J.A.C. 6A:14-2.3.")).

The parents argued that Ringwood did not need to reevaluate M.W. because they obtained their own independent evaluations. *Id.*  The ALJ disagreed.  The ALJ noted that in the context of the IDEA's reevaluation requirements, courts consistently hold that "if a student's parents want him to receive special education under IDEA, they must allow the school itself to reevaluate the student and they cannot force the school to rely solely on an independent evaluation." *Id.* (quoting *M.S. v. Mullica Twp. Bd. of Educ.*, 485 F. Supp. 2d 555, 568 (D.N.J. 2007)).  Relying on New Jersey administrative regulations, the ALJ reaffirmed the principle that "a parent cannot refuse to allow the school district to offer a FAPE, and later seek reimbursement for a unilateral placement, predicated on the school district's failure to offer a FAPE." *Id.* at *4 (quoting *S.W. v. Florham Park Bd. of Educ.*, No. 15-7842, 2017 WL 2267263, at *4 (D.N.J. May 24, 2017)).

Accordingly, the ALJ ordered the following: "as long as respondents/parents continue to withhold consent to allow the District to perform its evaluations on M.W., the parents . . . will have waived their rights to challenge the District's placement and programming for M.W., or otherwise allege that the District's placement and programming for M.W. failed to provide a FAPE at any time after November 27, 2019." *Id.* The ALJ made clear that the "decision [wa]s final pursuant to 20 U.S.C. § 1415(i)(1)(A) and 34 C.F.R. § 300.514 (2019), and . . . appealable by filing a complaint and bringing a civil action in . . . a district court of the United States." *Id.* at *4 (citing 20 U.S.C. 1415(i)(2); 34 C.F.R. § 300.516).

The Third Circuit summarized the ensuing district court proceeding as follows:

> In December 2021, the Appellants filed a counseled complaint in the District Court. The complaint named the Appellants and M.W. as plaintiffs; it named as defendants the Appellees here, including Ringwood and various New Jersey state entities. The complaint challenged the administrative proceedings and raised claims under the IDEA, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 *et seq.* ("NJLAD"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Section 504"). Ringwood filed an answer and counterclaims. The District Court dismissed all of the counterclaims except Ringwood's claim for attorney's fees under the IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(II-III).

> In July 2022, the Appellants' counsel filed a motion to withdraw. In October 2022, the District Court issued an opinion and order granting the motion, providing the Appellants with 60 days to find substitute counsel or proceed pro se, and noting that M.W. could not proceed pro se in federal court. After the Appellants and M.W. failed to secure counsel by the extended deadline of August 31, 2023, the defendants filed motions to dismiss.

> The District Court granted the motions and dismissed the complaint. The District Court concluded that M.W. could not proceed pro se in federal court, that the Appellants lacked standing to bring any claims on behalf of M.W., and that the Appellants lacked standing to bring their own claims because they failed to allege an injury under the relevant statutes.

*G.W. v. Ringwood Bd. of Educ.*, No. 24-2048, 2025 WL 2465747, at *1 (3d Cir. Aug. 27, 2025).

In affirming the District Court's decision, the Third Circuit noted that although the parents maintain their own "substantive rights under the IDEA that they could pursue pro se," the parents failed to allege an injury because they "failed to allege or explain how M.W.'s right to a FAPE was impeded." *Id.* at *2. The Third Circuit also noted that Ringwood, not the parents, initiated the due process hearing. *Id.* Further, the Third Circuit mentioned the ALJ's determination "that as long as consent was not provided, the IDEA and implementing regulations would limit the Appellants' rights to bring certain challenges regarding the provision of a FAPE." *Id.* In sum, the parents failed to demonstrate "that any alleged procedural errors in the administrative process (which they participated in) are actionable under the IDEA, as they have not alleged how any such error 'result[ed] in a loss of educational opportunity for the student, seriously depriv[ed] parents of their participation rights, or caus[ed] a deprivation of educational benefits." *Id.* (alterations in original) (quoting *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 565 (3d Cir. 2010)).

### ii. Plaintiff's 2023 Due Process Petition Underlying the Instant Case

On August 31, 2023, Plaintiff filed a due process petition to the New Jersey Department of Education. Administrative Record, D.E. 97-1, at 40. Plaintiff alleged that Ringwood (1) failed to implement M.W.'s IEP during the COVID-19 pandemic, (2) failed to hold an IEP meeting to discuss compensatory education and services for M.W., as required by N.J.S.A. 18A:46-1.3(b), and (3) unilaterally and improperly held an IEP meeting without the parents where it was determined that M.W. did not require compensatory education or services. *Id.* at 42-43 ¶¶ 3-5. In the petition, the parents asserted they incurred expenses to provide

7

compensatory special education and related services that Ringwood failed to provide. *Id.* at 43 ¶ 17.

Ringwood filed its answer to the due process petition on September 8, 2023. D.E. 97-1, at 49. Ringwood asserted that the parents did not respond to Ringwood's attempts to schedule the compensatory education meeting. *Id.* at 51 ¶ 15. Having received no response, Ringwood held the meeting and determined that COVID-19-related compensatory education and services were unnecessary. *Id.* Additionally, Ringwood argued that the parents failed to establish that they incurred any out-of-pocket expenses for M.W. *Id.* ¶ 17. A November 2023 settlement attempt was unsuccessful. *Id.* at 54-55.

On June 10, 2024, Ringwood filed a motion for summary decision, which Plaintiff opposed. *Id.* at 177. The substance and sum of Ringwood's argument was that Plaintiff's new due process petition was moot based on the previous litigation described. By that time, the District Court had affirmed the administrative decision. *See id.* Plaintiff countered that (1) Ringwood was barred from filing a motion for summary decision, (2) summary decision motions could be filed only as IDEA sufficiency challenges, and (3) a Final Decision approving a settlement in another case rendered ALJ Tiscornia's 2021 decision moot. *Id.* at 178-79.

The ALJ presiding over the instant matter, Thomas R. Betancourt, dismissed Plaintiff's arguments as baseless. *Id.* at 179. ALJ Betancourt, quoting ALJ Tiscornia, noted that "as long as [G.W. and K.W.] continue to withhold consent to allow [the District] to perform its evaluations on M.W., the parents, K.W. and G.W., will have waived their rights to challenge [the District's] placement and programming for M.W., or otherwise allege that [the District's] placement and programming for M.W. failed to provide a FAPE at any time after November 27, 2019." *Id.* at 177 (quoting *Ringwood*, 2021 WL 8322401, at *2)). Finding that Plaintiff had yet

8

to consent to the evaluations Ringwood requested, ALJ Betancourt held that the parents "have waived their rights to challenge the District's placement and programming for M.W. at any time after November 27, 2019." *Id.* at 178.

On August 5, 2024, Plaintiff filed this matter to appeal ALJ Betancourt's decision. Compl., Aug. 5, 2024, D.E. 1 ¶ 1. Plaintiff urges the Court to (1) reverse or remand the ALJ's decision, (2) declare that Defendant violated M.W.'s right to a FAPE during the COVID-19 pandemic, (3) order Defendant to provide M.W. with compensatory education, and (4) award fees and costs. *Id.* at 8.

Defendant answered Plaintiff's Complaint on or about September 4, 2024. Answer, D.E. 5. This Court denied Plaintiff's motion to strike Defendant's answer. Op. & Order, Nov. 14, 2024, D.Es. 16 & 17. The Court provided Defendant with fourteen days to file an amended answer, which Defendant timely submitted on November 27, 2024. Am. Answer, D.E. 20.

After the Rule 16 scheduling conference, the Court ordered defense counsel to request a copy of the administrative record from the OAL, and to serve it on Plaintiff. Pretrial Scheduling Order, Dec. 6, 2024, D.E. 27; Order, Mar. 11, 2025, D.E. 39. The cross motions for summary judgment followed. In connection with the prior summary judgment motions,[6] and as required by 20 U.S.C. § 1415(i)(2)(C), Plaintiff provided what was purported to be the administrative record on appeal. Am. Document, Jan. 2, 2026, D.E. 71. Plaintiff then moved to seal the entirety of the administrative record. Mot. to Seal, Jan. 7, 2026, D.E. 74.[7] The Undersigned

---

[6] The instant motion was previously fully briefed. *See* Def.'s Mot. for Summ. J., Jan. 2, 2026, D.E. 68; Pl.'s Mot. for Summ. J., Jan 2, 2026, D.E. 70; Pl.'s Opp'n, Jan. 20, 2026, D.E. 78; Def.'s Opp'n, Jan. 20, 2026, D.E. 79; Pl.'s Reply, Jan. 26, 2026, D.E. 82; Def.'s Reply, Jan. 28, 2026, D.E. 83.

[7] Plaintiff's motion to seal referred to D.E. 68, which was Defendant's first motion for summary judgment, rather than D.E. 71, which is the administrative record Plaintiff sought to seal and the docket entry that was, is, and will remain under seal.

denied that motion without prejudice.  Order Denying Mot. to Seal, Feb. 3, 2026, D.E. 84.  The Court noted that although there existed "some portions of the [a]dministrative [r]ecord containing material protected from disclosure that should be redacted . . . Plaintiff's motion does not adequately explain how the existence of some protected material warrants the sealing of the entire [a]dministrative [r]ecord." *Id.* at 4 n.2.  The Order contained specific guidelines for Plaintiff to follow to ensure that any renewed motion complied with Local Civil Rule 5.3(c)(3), which governs motions to seal.  *Id.* at 5.

Plaintiff thereafter filed a flurry of submissions, none of which contained a renewed motion to seal complying with Local Civil Rule 5.3(c)(3).  *See* "Exhibit to Complaint," Feb. 3, 2026, D.E. 85 (filed under seal, purported to be the entire administrative record); Mot. to Amend/Correct, Feb. 3, 2026, D.E. 86 (informing the Court that the previously filed administrative record at D.E. 71 was not actually complete, explaining that D.E. 85 constituted the complete administrative record, moving to seal D.E. 85 in its entirety, and requesting to remove D.E. 71 from the docket); Letter, Feb. 3, 2026, D.E. 87 (explaining that D.E. 86 contained errors and correcting the renewed motion to seal); "Amended Document," Feb. 14, 2026, D.E. 88 (providing an index to the administrative record); "Amended Document," Feb. 20, 2026, D.E. 89 (correcting D.E. 88, which was incomplete).

To ensure that the Court and parties had the complete administrative record for the summary judgment motions, and following a telephone conference held on February 27, 2026, the Court terminated the previous summary judgment motions, D.Es. 68 & 70, and the motion to amend, D.E. 86.  The Court directed the parties to jointly file the complete administrative record, with an appropriate motion to seal, and to re-file the summary judgment motions.  Order, Feb.

27, 2026, D.E. 95. The motions are now fully briefed, redacted versions of the administrative record are now on the docket, and the cross-summary judgment motions are ripe for review.[8]

## III.   DISCUSSION

### a.   Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3)(A). Aggrieved parties have the right to appeal final ALJ decisions to this Court pursuant to 20 U.S.C. § 1415(i)(2). *See S.W.*, 2017 WL 2267263, at *4.

### b.   Standard of Review

Pursuant to Rule 56(c), a motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). All facts and inferences must be construed "in the light most favorable to the nonmoving party." *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994). Where the non-moving party bears the burden of proof on an issue, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to

---

[8] A redacted version of the entire administrative record is filed at D.E. 96. Plaintiff additionally submitted a redacted version of the portions of the administrative record in connection with the summary judgment motion at D.E. 97-1. Neither filing was accompanied with an appropriate motion to seal comporting with Local Civil Rule 5.3. The Undersigned will address sealing below.

the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

The party seeking summary judgment must initially provide the Court with the basis for its motion. *Id.* at 323. This requires the moving party to either establish that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or demonstrate that the non-moving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. Once the party seeking summary judgment has carried this initial burden, the burden shifts back to the non-moving party. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).

To avoid summary judgment, where the non-moving party will bear the burden of proof at trial on a dispositive issue, he or she must demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The opposing party must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In addition, summary judgment may be granted if the nonmoving party's "evidence is merely colorable . . . or is not significantly probative." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Under the IDEA, a court reviewing an administrative decision must receive the administrative record, may consider additional evidence upon request, base its decisions upon the preponderance of the evidence, and grant appropriate relief. 20 U.S.C. § 1415(i)(2)(C); *M.A. v. Vorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002). The party "challenging the

12

administrative decision bears the burden of persuasion before the district court as to each claim challenged." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012).

Therefore, a "District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings of the ALJ." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006); *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003) ("Factual findings from the administrative proceedings are to be considered prima facie correct."). "Due weight" is afforded to the administrative proceedings to prevent the courts from imposing "their own notions of sound education policy." *See Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 757 (3d Cir. 1995) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 205-06 (1982)). In applying the "due weight" standard, the court must "consider – although not necessarily . . . accept – the administrative fact findings." *D.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 898 (3d Cir. 1997). If a court departs from the ALJ's findings, it must find factual support in the record and fully explain why it departed from the ALJ's decision. *S.H.*, 336 F.3d at 270. An ALJ's credibility determinations made after hearing live testimony are entitled to special weight, "unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion." *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (quotations omitted). However, the ALJ's legal determinations are reviewed *de novo*. *See, e.g.*, *P.N. v. Greco*, 282 F. Supp. 2d 221, 235 (D.N.J. 2003).

### c. IDEA

The primary purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education [FAPE] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1). The United States Supreme Court has interpreted the FAPE provision to mean that schools in states that

13

receive federal funding must provide "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Rowley*, 458 U.S. at 203. The Third Circuit has further interpreted this provision to require the educational program to provide special education students with meaningful educational benefits. *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 184 (3d Cir. 1988).

The IDEA provides funding to states to help meet their educational needs. *Honig v. Doe*, 484 U.S. 305, 310 (1988). To qualify for financial assistance, states must comply "with the IDEA's extensive substantive and procedural requirements." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992). "By providing a host of procedural safeguards, Congress intended to promote [the Act's] purpose" of providing a FAPE. *Engwiller v. Pine Plains Cent. Sch. Dist.*, 110 F. Supp. 2d 236, 247 (S.D.N.Y. 2000) (quoting *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, No. 99-9294, 1999 WL 980164, at *4 (S.D.N.Y. Oct. 28, 1999)). The IDEA's procedural safeguards are also meant to ensure attainment of its substantive goals. *Rowley*, 458 U.S. at 205-06.

One substantive requirement of the IDEA is to educate special education students in the least restrictive environment. *Murray v. Montrose Cnty. Sch. Dist. RE-IJ*, 51 F.3d 921, 926 (10th Cir. 1995) (quotations omitted). States must establish "procedures to ensure that . . . [t]o the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled . . . ." 20 U.S.C. § 1412(a). Children with disabilities may be removed from the "regular educational environment . . . only when the nature and severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." *Id.*; *see Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1213-14 (3d Cir. 1993). The New Jersey State regulations include a

14

similar directive to educate classified children alongside their non-disabled peers in the least restrictive environment.  *See* N.J.A.C. 6A:14-4.2.

School districts implement a FAPE by designing an IEP for each special education student.  20 U.S.C. § 1414(d).  The Third Circuit has described the IEP as "the 'centerpiece' of the IDEA's system for delivering education to disabled children." *D.S.*, 602 F.3d at 557 (quoting *Polk*, 853 F.2d at 173).  State educational authorities are required to "identify and evaluate disabled children, § 1414(a)-(c), develop an IEP for each one, § 1414(d)(2), and review every IEP at least once a year, § 1414(d)(4)." *Schaffer v. Weast*, 546 U.S. 49, 53 (2005).  The IEP must be "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *D.S.*, 602 F.3d at 557 (quotations and citations omitted).

Parents play a critical role in formulating the IEP along with the other members of the IEP team.  20 U.S.C. § 1414(d)(1)(B); *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524 (2007).  Parents are entitled to participate in the IEP meetings and must be given notice by the school of any changes to their child's intended educational program.  20 U.S.C. § 1415(b).  The "process culminates in the formulation of an [IEP], tailored to the child's unique needs." *Hoeft*, 967 F.2d at 1300.  The IDEA enables parents "to act as advocates for their children at every stage of the administrative process." *Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 256 (1st Cir. 2003).

New Jersey regulations require LEAs to provide adequate notice to parents before holding IEP meetings.  *See* N.J.A.C. 6A:14-2.3(k).  "If the parent cannot attend the meeting(s), the chief school administrator or designee shall attempt to ensure parental participation.  Parental participation may include the use of electronic conference equipment to conduct a

15

videoconference or conference call." N.J.A.C. 6A:14-2.3(k)(6). "A meeting may be conducted without the parent in attendance if the district board of education can document that it is unable to secure the participation of the parent." N.J.A.C. 6A:14-2.3(7). "The district board of education shall maintain a record of its attempts to arrange the meeting." *Id.* The record may maintain, but is not limited to, the following: "(i) detailed records of telephone calls made or attempted and the results of those calls; (ii) copies of correspondence sent to the parents and any responses received; and (iii) detailed records of visits made to the parent's home or place of employment and the results of those visits." *Id.*

The IDEA's procedural safeguards also include the right to present a complaint regarding a child's educational plan in a due process hearing. 20 U.S.C. § 1415(b)(6), (f), (k). Under New Jersey Law, the school district bears the burden of demonstrating that the district has offered the student a FAPE. N.J.S.A. 18A:46-1.1; *see also Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 533 (3d Cir. 1995) ("In administrative and judicial proceedings, the school district bears the burden of proving the appropriateness of the IEP it has proposed.") (citing *Oberti*, 995 F.2d at 1219; *Fuhrmann v. E. Hanover Bd. of Educ.*, 993 F.2d 1031, 1035 (3d Cir. 1993)).

Any party dissatisfied with the outcome of the due process hearing may bring a civil action in any state or federal district court. *Id.* § 1415(i)(2)(A). "However, it is clear from the language of the Act that Congress intended plaintiffs to complete the administrative process before resorting to federal court." *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994). Requiring exhaustion of the administrative process before allowing claims to be brought in a federal district court "encourages parents and the local school district to work together to formulate an individualized plan for a child's education, and allows the education agencies to apply their expertise and correct their own mistakes." *Woodruff v. Hamilton Twp.*

16

*Pub. Sch.*, 305 F. App'x 833, 837 (3d Cir. 2009).  "Nothing in [the IDEA's procedural safeguards] section shall be construed to preclude a parent from filing a separate due process complaint on an issue separate from a due process complaint already filed."  20 U.S.C. § 1415(o).

A procedural violation regarding IEP implementation can justify compensatory education if that violation caused such substantive harm that it denied the student a FAPE.  *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66-67 (3d Cir. 2010).  A parent can demonstrate substantive harm when "procedural inadequacies (i) [i]mpeded the child's right to a FAPE, (ii) significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child; or (iii) caused a deprivation of the educational benefit."  *Coleman v. Pottstown Sch. Dist.*, 983 F. Supp. 2d 543, 564 (E.D. Pa. 2013), *aff'd* 581 F. App'x 141 (3d Cir. 2014).

Compensatory education remedies past FAPE deprivations.  *Lester H. v. Gilhool*, 916 F.2d 865, 872 (3d Cir. 1990).  It "serves to 'replace . . . educational services the child should have received in the first place' and . . . such award 'should aim to place disabled children in the same position they would have occupied but for the school district's violations of the IDEA.'"  *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 717-18 (3d Cir. 2010) (quoting *Reid v. Dist. of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005)).  "Relief depends on the type of violation – a school district's purely procedural violation may entitle a plaintiff to injunctive relief for prospective compliance while a district's denial of a FAPE may entitle a plaintiff to compensatory relief such as compensatory education or tuition reimbursement."  *M.D. v. Vineland City Bd. of Educ.*, No. 19-12154, 2024 WL 195371, at *6 (D.N.J. Jan. 17, 2024).

### d. N.J.S.A. 18A:46-1.3

The New Jersey Legislature enacted N.J.S.A. 18A:46-1.3 in 2022.[9]  Under the statute,

parents, guardians, or LEAs could request a due process hearing to determine whether, and to

what degree, a child's right to a FAPE was affected by the COVID-19 pandemic.  N.J.S.A.

18A:46-1.3(a).  For every child who had an IEP between March 18, 2020 and September 1,

2021, LEAs were required to hold an IEP meeting to discuss whether the child needed

compensatory education and services.  N.J.S.A. 18A:46-1.3(b).  LEAs had a deadline of

December 31, 2022 to complete those compensatory education and services meetings.  *Id.*  After

the meeting, LEAs needed to provide written notice to the child's parent or guardian outlining

the determinations made, pursuant to N.J.A.C. 6A:14-1.1 *et seq. Id.*  The statute set a deadline of

September 1, 2023 for parents to "challenge the determinations of the IEP team if the parent or

guardian disagrees with the determinations." *Id.*  If an LEA already held an IEP meeting prior to

the enactment of the statute, and compensatory education and services were (1) discussed at that

meeting and (2) documented pursuant to subsection (b), the LEA was not required to hold an

additional IEP meeting.  N.J.S.A. 18A:46-1.3(c).  Under the statute, "[a] parent or guardian may

file for a due process hearing at any time, up to and including September 1, 2023, to challenge

the determinations of the IEP team if the parent or guardian disagrees with the determinations."

N.J.S.A. 18A:46-1.3(b).

Additionally, parents were barred under the statute from filing claims regarding

compensatory education and services during this time frame, if: (1) the parent had previously

filed for mediation or a due process hearing regarding compensatory education and services, (2)

---

[9]  The name of the statute is: "Request for a due process hearing regarding the education of a child with disabilities during a COVID-19 school closure or during periods of virtual, remote, hybrid, or in-person instruction; requirements; exceptions."

18

the parent's filing was within the prescribed timeframe, and (3) "the matter was resolved as a result of the mediation or a settlement agreement executed by the parties or a judicial or administrative order."  N.J.S.A. 18A:46-1.3(d).

### e.  The Parties' Arguments

Plaintiff asserts that the ALJ's summary decision under N.J.A.C. 1:1-12.5 violated the IDEA because Ringwood failed to timely file a sufficiency challenge, and Plaintiff did not consent to adjudication on summary decision.  Pl.'s Br., D.E. 97, at 13.  Thus, Plaintiff argues she was entitled to a full evidentiary hearing.  *Id.*  Plaintiff also contends that ALJ Betancourt improperly relied on ALJ Tiscornia's 2021 decision, which the District Court later affirmed.  *Id.* at 18.  Plaintiff additionally asserts that the ALJ incorrectly failed to analyze the merits of N.J.S.A. 18A:46-1.3, including whether M.W. was entitled to compensatory services and whether Ringwood followed the statute's requirements.  *Id.* at 20.  Finally, Plaintiff contends there existed genuine issues of material fact precluding a ruling on summary decision.  *Id.* at 26.[10]  Plaintiff's reply brief largely reiterates these arguments.  *See generally*, Pl.'s Reply, D.E. 104.

Defendant's summary judgment motion primarily argues one point:  "ALJ Betancourt correctly ruled that the final decisions of ALJ Tiscornia and United States District Judge Semper rendered Plaintiff's due process petition before the court moot."  Def.'s Br., Mar. 13, 2026, D.E. 99.  Defendant argues that summary decision was proper because "Plaintiff waived the right to

---

[10]  Plaintiff additionally argues that Ringwood was required to provide M.W. a FAPE because it accepted federal funds to provide M.W. with a FAPE.  Pl.'s Br., at 24.  It is a given that LEAs accepting federal funds to provide a student with a FAPE must, in turn, provide said student with a FAPE.

file said due process petition against [Ringwood]" "by withholding consent to evaluate." *Id.* at 11.  Like Plaintiff's, Defendant's reply brief largely reiterates these arguments.

Plaintiff's responding brief argues, without support, that Defendant was not allowed to file a cross-summary judgment motion.  Pl.'s Opp'n, D.E. 100, at 6.  Plaintiff additionally responds that Ringwood's motion ignores New Jersey's compensatory education statute.  *Id.* at 10.

Defendant's responding brief argues that ALJs are not prohibited from issuing summary decisions in IDEA cases.  Def.'s Opp'n, D.E. 101, at 6.  Defendant, categorizing Plaintiff's claim as a "COVID-era FAPE Claim," asserts that ALJ Tiscornia's 2021 decision bars Plaintiff instant claims because they "arise from the same ongoing refusal to participate in the IDEA process." *Id.* at 8.  Defendant's remaining arguments, in sum, assert that ALJ Betancourt properly disposed of Plaintiff's claims without addressing the merits because they were procedurally barred, and no genuine issue of material of fact existed because ALJ Betancourt only needed to resolve a question of law.  *Id.* at 10-14.

### f.  Analysis

As a preliminary matter, the Court disagrees with Plaintiff's assertion that Defendant lacks standing to file a cross-summary judgment motion.  *See* Pl.'s Opp'n, D.E. 100, at 9.  As both parties note, 20 U.S.C. § 1415(i)(2)(A) provides that "any party aggrieved by the findings and decision [of a due process hearing] . . . shall have the right to bring a civil action."  Pl.'s Opp'n, D.E. 100, at 9; Def's Reply, D.E. 103, at 4.  That statute governs which party may file a complaint, but not which party may move for summary judgment.  Defendants correctly note that "[p]laintiffs cite no authority holding that a respondent in an IDEA appeal is barred from filing a summary judgment motion."  Def.'s Reply, D.E. 103, at 4.

20

To support this proposition, Plaintiff initially relied on two cases that did not appear to exist. On May 15, 2026, the Court ordered Plaintiff's counsel to provide PDF electronic copies of cases cited and highlight where the quotation or proposition was located within that authority. Memorandum Order, D.E. 106. Plaintiff's counsel submitted a letter on June 1, 2026 that partially complied with the Order. Letter, D.E. 108. Plaintiff's counsel admitted that he "appears to have overstated or paraphrased [a] decision's language rather than quoted it directly." Ex. A, D.E. 108-1. Plaintiff's counsel also stated that he "deeply regrets that these citation and formatting errors were not detected and corrected during final review prior to docketing[.]"[11] The Court cautions counsel to use more care going forward, as "[n]umerous examples exist where district courts have found legal briefs containing AI hallucinated case law masked as actual legal authority . . . . When this occurs, courts have found it appropriate to impose monetary fines ranging from $1,000 to $6,000." *Gardner v. Combs*, No. 24-7729, 2025 WL 3632704, at *2 (D.N.J. Dec. 15, 2025) (collecting cases).

---

[11] Plaintiff's counsel averred "that Defendant's filings appear to suffer from some of the similar systematic citation and authority infirmities as do Plaintiffs." D.E. 108, at 2 n.1 The Court disagrees with both of Plaintiff's examples.

First, *Rowley*'s "due weight" standard courts apply in reviewing IDEA appeals has not been superseded by statute, and Plaintiff provides no support to the contrary. *See L.E.*, 435 F.3d at 389 (citing *Rowley*, 458 U.S. at 206) ("When deciding an IDEA case, the District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings of the ALJ."). In fact, Plaintiff's own brief acknowledges the modified de novo standard requiring courts to give due weight to state administrative proceedings in IDEA appeals. Pl.'s Br., D.E. 97, at 9-10.

Second, Plaintiff asserts that Defendant cites to a case that "does not appear to exist in any public legal database or indexing reporter." D.E. 108, at 2 n.1. The case, *Victoria v. Board of Education of Woodbridge*, 1982 S.L.D. 1, 5, can be found on the New Jersey State Library School Law Decisions website, https://dspace.njstatelib.org/items/a281c141-483f-47bb-8b56-9fc8bfa9c44e.

### i.  Statutory Right to a Due Process Hearing

The parties' cross-motions for summary judgment require the Court first to consider whether the Administrative Law Judge erred in issuing a final decision based on a motion for summary decision, rather than conducting a full due process hearing.

The IDEA states, in relevant part, that "a party to a [due process] hearing . . . shall be accorded . . . the right to present evidence and confront, cross-examine, and compel the attendance of witnesses." 20 U.S.C. § 1415(h)(2).  The controlling federal regulation also guarantees parents the right to present the right to present both evidence and witnesses at a due process hearing conducted in accordance with the IDEA.  34 C.F.R. § 300.512(a)(2) (stating that a party to a due process hearing "has the right to . . . present evidence and confront, cross-examine, and compel the attendance of witnesses").[12]  IDEA due process hearings that afford the parties the procedural safeguards contained within the IDEA and its implementing regulations, satisfy constitutional due process requirements. *See S.W.*, 2017 WL 2267263, at *7 (collecting cases).

In situations where parties to the due process hearing have been denied their procedural rights, the matter is often remanded so that an ALJ may conduct a full hearing in accordance with the IDEA.  *See J.C. v. N.Y.C. Dep't of Educ.*, No. 15-3345, 2015 WL 8940044, at *15, *21 (S.D.N.Y. Dec. 16, 2025) (remanding case for a new hearing where parent, who was a party to the due process hearing, was denied the right to present testimony from herself and two other witnesses); *B.G. v. Ocean City Bd. of Educ.*, No. 13-5166, 2014 WL 4798647, at *7 (D.N.J. Sept. 26, 2014) (finding remand appropriate where it was not disclosed to the petitioner in advance of

---

[12]  The relevant portion of the New Jersey Administrative Code is silent on the issue of presentation of witnesses during the due process hearing.  *See generally* N.J.A.C. 6A:14-2.7.

the hearing before the ALJ that the Board would present a particular witness and therefore, petitioner was deprived the right to cross-examine that witness); *Davis v. D.C. Bd. of Educ.*, 522 F. Supp. 1102 (D.D.C. 1981) (remanding case for a full evidentiary hearing where the hearing officer rendered a decision on the proper placement for the learning disabled student without first hearing any of the plaintiffs' evidence concerning that placement).

The analysis thus turns on whether ALJ Tiscornia's September 24, 2021 decision, which held that the parents waived their rights to challenge M.W.'s IEP placement and programming so long as the parents continued to withhold consent for evaluations, barred Plaintiff from bringing the underlying due process petition here under N.J.S.A. 18A:46-1.3. For the reasons that follow, the Undersigned finds that it the 2021 decision did not bar the instant underlying due process petition.

First, the Court questions whether adjudication by summary decision was appropriate in this matter. Defendant does not provide, and the Court's independent research did not reveal, any authority supporting Defendant's proposition that "summary disposition is routinely upheld in IDEA cases where claims fail as a matter of law, including where standing is lacking, claims are time-barred, or prior adjudications foreclose relief." D.E. 101, at 9. Rather, the Court finds persuasive Plaintiff's reliance on the April 25, 2022 OSEP Policy Letter,[13] provided at D.E. 97-1, at AR143-47, which provides:

> Whenever a due process complaint is received under 34 C.F.R. §§ 300.507 or 300.532, the parents or the local educational agency involved in the dispute must have an opportunity for an impartial due process hearing, consistent with the procedures in 34 C.F.R. §§ 300.507, 300.508, and 300.510. 34 C.F.R. § 300.511(a). Among the rights IDEA affords parties to any hearing conducted

---

[13] OSEP "policy letters are not binding statements of the law, but may be persuasive." *V.M. ex rel. B.M. v. Sparta Twp. Bd. of Educ.*, No. 12-892, 2014 WL 3020189, at *18 (D.N.J. July 3, 2014).

> pursuant to §§ 300.507 through 300.513 or §§ 300.530 through 300.534, or an appeal conducted pursuant to § 300.514, is the right to present evidence and confront, cross-examine, and compel the attendance of witnesses.  34 C.F.R. § 300.512(a)(2).
>
> IDEA does not address procedures for dismissal of due process hearing requests outside of the context of the sufficiency of the complaint.  In other words, the only provision in IDEA or its implementing regulations that contemplates summary dismissal is when the due process complaint is insufficient.  To the extent any summary proceedings in a hearing on a due process complaint – other than a sufficiency determination – limit, or conflict with, either party's rights, including the right to present evidence and confront, cross-examine, and compel the attendance of witnesses, we believe such proceedings can be used only when both parties consent to the use of summary process (e.g., cross-motions for summary judgment).

On the one hand, a plain reading of the OSEP Policy Letter calls into question the use of a summary decision in the state IDEA administrative proceeding.  On the other hand, this case contains a previous ALJ order barring the parents from challenging Ringwood's IEP placement and programming so long as they continued to withhold parental consent.

A careful reading ALJ Tiscornia's 2021 decision, including consideration of the circumstances leading to that litigation, resolves the issue.  The 2021 decision, while broadly holding that the parents waived their rights to challenge M.W.'s IEP placement, is nonetheless limited in scope.  The catalyst of the 2021 decision was that M.W.'s parents refused to consent to Ringwood's reevaluations, despite Ringwood's legal right to reevaluate M.W. and legal obligation to do so within a specified timeframe.  *Ringwood*, 2021 WL 8322401, at \*1.  The 2021 decision thus allowed Ringwood to perform the reevaluation without fear of a later due process challenge.  *Id.* at \*4.  Ringwood's requested relief indicates that its due process petition was limited to the parents' refusal to consent to reevaluation, ALJ Tiscornia finding that Ringwood sought:

24

> . . . an order requiring the parents to sign the consent form, or, in the alternative, an order reflecting that the parents have been deemed to have waived their rights to later allege that the District's placement and program for M.W. failed to provide a FAPE at any time after November 27, 2019 (the date on which the parents were first provided with the consent form *at the heart of this matter*, which they have since failed to sign and return).

*Id.* (emphasis added).

The 2021 decision did not, however, categorically eliminate Plaintiff's parental rights, or relieve Ringwood of its future obligations under the IDEA or relevant New Jersey regulations. To the contrary, ALJ Tiscornia's decision reaffirmed that under N.J.A.C. 6A:14-3.8(a), Ringwood "is required to re-evaluate a classified student every three years to confirm the student's classification and the appropriateness of the student's program and placement." *Ringwood*, 2021 WL 8322401, at *3 (quoting *Bordentown Reg'l Bd. of Educ. v. M.R.*, No. EDS 679-12, 2012 WL 423636, at *1 (N.J. Adm. Feb. 3, 2012)). ALJ Tiscornia also noted that Ringwood needed parental consent before conducting a reevaluation. *Id.* (quoting N.J.A.C. 6A:14-3.8(c)). ALJ Tiscornia went on to say that "[i]f a parent refuses to provide consent, the district may request a due-process hearing, as in the instant matter." *Id.* (citing N.J.A.C. 6A:14-2.3(c), -2.7(b)). In other words, regardless of the result of ALJ Tiscornia's 2021 decision, the district was legally required to (1) reevaluate M.W. in three years, (2) obtain parental consent, and (3), if the parent did not consent, request a due-process hearing. Nothing in ALJ Tiscornia's 2021 decision allowed Ringwood to forgo that process in the future simply because the parents previously refused to consent.

Additionally, the 2021 decision could not have possibly contemplated the New Jersey Legislature's 2022 compensatory education statute, which confers a parental right to "file for a due process hearing at any time, up to and including September 1, 2023, to challenge the

25

determinations of the IEP team if the parent or guardian disagrees with the determinations."
N.J.S.A. 18A:46-1.3.  Considering that "[n]othing in [the IDEA's procedural safeguards] section
shall be construed to preclude a parent from filing a separate due process complaint on an issue
separate from a due process complaint already filed," 20 U.S.C. § 1415(o), Plaintiff had the right
to file a due process petition regarding Ringwood's compensatory services determination.  That
is true even if Plaintiff had waived the right to challenge Ringwood's previous placement and
programming decisions made without parental consent.

A hypothetical scenario highlights why Ringwood's arguments to the contrary are
unpersuasive.  The parties dispute whether Plaintiff received notice.  But they agree that
Ringwood held an IEP meeting on June 2, 2021.  D.E. 96-4, at AR164.  At that meeting, the IEP
team, without the parents present, decided that M.W. did not need compensatory services.  But
suppose Ringwood never held a compensatory-services IEP meeting, even though N.J.S.A.
18A:46-1.3 required one.  Following Ringwood's logic, Plaintiff would be barred from bringing
a due process petition to challenge Ringwood's non-compliance with the statute because
"[w]here a parent is precluded, as a matter of law, from asserting a denial-of-FAPE claim,
compensatory education is likewise unavailable."  D.E. 101, at 11.  This conclusion contravenes
N.J.S.A. 18A:46-1.3, which (1) requires LEAs to hold a compensatory services IEP meeting, and
(2) allows a parent to file a due process petition to challenge the determinations made at that
meeting.  It follows that that statute also would allow the parents to raise to challenge an LEA's
failure to make *any* compensatory-education determination.

Regardless of whether the use of a summary decision was appropriate here, the Court
agrees with Plaintiff that there existed genuine issues of material fact that should have precluded
summary decision in the state administrative proceeding.  As noted above, the 2021 decision did

not relieve Ringwood of its obligations under the IDEA and New Jersey's Administrative Code. Specifically, Ringwood was still required to provide notice of the June 2, 2021 IEP meeting to the parents. N.J.A.C. 6A:14-2.3(k). The parties dispute whether the parents received said notice. D.E. 96-4, at AR163-66.

LEAs are permitted to hold IEP meetings without parents, so long as records are maintained detailing the efforts the district undertook to provide the parents with notice. N.J.A.C. 6A:14-2.3(7). But the administrative record only provides an email sent to the parents after the meeting had already been held, stating that district staff sent notice emails on three dates in May 2021. D.E. 96-4, at AR164. Ringwood's motion for summary decision appears to rely on the same email. *See* Ex. B, D.E. 97-1, at 106. But Ringwood supplied none of those meeting notices. Under N.J.A.C. 6A:14-2.3(7), there should be detailed records from before, not after, the IEP meeting documenting the school district's efforts to contact the parents. Because those records from before the IEP meeting are not in the administrative record, the Court finds that a genuine issue of material fact exists regarding whether the parents had notice of the June 2, 2021 compensatory services IEP meeting.

It may be that an ALJ hearing both sides' witnesses would credit Defendant's evidence over Plaintiff's evidence. And that ALJ might have concluded that Ringwood properly notified the parents of the June 2, 2021 compensatory services IEP meeting, and correctly determined that M.W. did not need compensatory education and related services. To be clear, the Court takes no position on those issues. But the Court is satisfied that Plaintiff had the right to an impartial due process hearing under § 1415(h)(2), limited of course, to Ringwood's determination on compensatory services at the IEP meeting mandated by N.J.S.A. 18A:46-1.3. Ringwood correctly notes that Plaintiff, by refusing to consent to Ringwood's reevaluation,

waived her right to challenge that portion of M.W.'s IEP.  By granting summary judgment for Ringwood, however, the ALJ denied Plaintiff a fair opportunity to present evidence regarding potential violations of the compensatory education statute, in violation of § 1415(h)(2), 34 C.F.R. § 300.512(a)(2), and N.J.S.A. 18A:46-1.3.  Plaintiff should have been afforded the opportunity to present witnesses and evidence to refute any evidence proffered by Defendant, and to attempt to demonstrate that Ringwood's compensatory-services determination was inadequate.

### ii.  Remand is Appropriate

Having determined that Plaintiff should have been permitted to proceed with a due process hearing on the issue of compensatory services, the Court must now determine whether to remand this action so that a due process hearing can take place, or whether this Court is the appropriate venue for determining whether Ringwood's actions provided M.W. with a FAPE. As noted above, federal courts regularly remand upon finding a denial of procedural rights.  That is because the Court "defer[s] to the expertise of administrative agencies in the areas upon which those agencies are called to administer."  *Fuhrmann*, 993 F.2d, at 1043; *see also R.S. v. Montgomery Twp. Bd. of Educ.*, No. 10-5265, 2012 WL 2119148, at *7 (D.N.J. June 11, 2012) (on remanding the case to the ALJ for further consideration of whether the plaintiff received a FAPE, the Court recognized that "courts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy'") (internal citation omitted).  Remand is particularly appropriate in this instance, not only because Plaintiff was not afforded the benefit of a due process hearing, but also because the compensatory education statute at issue is relatively new and thus lacks sufficient caselaw.

Because the Court has determined that Plaintiff was not provided the due process protections of the IDEA, and that remand is appropriate, it need not reach the parties' other

arguments.  Accordingly, the Court will remand this matter to the New Jersey Office of Special

Education Programs in the first instance so that it may refer the matter to an ALJ for a due

process hearing that comports with the requirements of the IDEA.  *See* N.J.A.C. 6A:14-2.7(g)

("When the [OSEP] receives a request for a due process hearing, the matter shall be processed

and, as appropriate, mediation and a due process hearing in accordance with this chapter will be

made available to the parties.").

### iii.  Motion to Seal

As noted above, two forms of the redacted administrative record were not filed under

seal.  *See* D.E. 96 (entire administrative record); D.E. 97-1 (portions of the administrative record

Plaintiff relied on for the summary judgment motion).  Local Civil Rule 5.3 governs motions to

seal.  *See Medley v. Atl. Exposition Servs., Inc.*, 550 F. Supp. 3d 170, 203 (D.N.J. July 26, 2021).

"Courts must make findings on the Local Civil Rule 5.3(c)(3) factors in orders and opinions

sealing or otherwise restricting public access to judicial proceedings or related materials."  *M.D.*

*v. Vineland City Bd. of Educ.*, No. 19-12154, 2024 WL 195371, at *15 (D.N.J. Jan. 17, 2024);

*see also* Order Denying Mot. to Seal, Feb. 3, 2026, D.E. 84.

The Court notes that the parties have neither complied nor attempted to comply with

Local Civil Rule 5.3 in the previous motions to seal.  *See* Mot. to Seal, Jan. 7, 2026, D.E. 74

(failing, among other things, to (1) specify exact portions of the administrative record that

warranted sealing, (2) provide an index in support of the motion complying with Local Civil

Rule 5.3(c)(3), (3) include a proposed form of order); Mot. to Amend/Correct, Feb. 3, 2026, D.E.

86 (administratively terminated by the Court's February 27, 2026 Order, D.E. 95, and noting that

"any application to seal shall corrected the deficiencies noted in the February 23, 2026 Order . . .

and comply with Local Civil Rule 5.3, or the sealing request will be denied").  "Similar

procedural shortcomings have led to motion denials."  *M.D.*, 2024 WL 195371, at \*15

(collecting cases); *see also F.V. v. Cherry Hill Twp. Bd. of Educ. Members*, No. 22-4401, 2022

WL 16710438, at \*3 (D.N.J. Nov. 4, 2022) (summarily denying the plaintiff's request to redact

and seal a filing in its entirety where the documents contents were already publicly available and

the materials contained no private information).

Currently, there is no pending motion to seal.  "However, even in the absence of a formal

motion to seal, a court may *sua sponte* order that documents remain under seal based on the

factors set out in L. Civ. R. 5.3(c)(2)."  *Pal v. Univ. of Med. and Dentistry of N.J.*, No. 11-6911,

2013 WL 4607160, at \*1 (D.N.J. Aug. 29, 2013); *see also Bracco Diagnostics, Inc. v. Amersham

Health Inc.*, No. 03-6025, 2007 WL 2085350, at \*5 (D.N.J. July 18, 2007) (ordering documents

to remain under seal despite a motion that failed to comply with Local Civil Rule 5.3).

Plaintiff's counsel's March 12, 2026 letter to the Court asserts that "in IDEA appeals, this

District Court has for the last 20+ years routinely allowed student records to be filed under seal."

D.E. 98, at 1 n.1.  That might be true, but it does not relieve a party of its obligation to make an

appropriate motion under Local Civil Rule 5.3.  In fact, the Court made this plain to counsel in a

prior order.  *See* Order Denying Mot. to Seal, D.E. 84.

Given that the Court has not granted any motion to seal for Docket Entries 71 and 85, and

may order those Docket Entries to be unsealed, "it concludes that doing so would cause

unnecessary delay and uncertainty when the merits of the motion are apparent to the Court."

*M.D.*, 2024 WL 195371, at \*15.  Based on its own review of the record, and comparing the

unredacted and redacted versions of the documents sought to be sealed, the Court agrees that

Docket Entries 71 and 85 should remain under seal and that the redactions in Docket Entries 96

and 97-1 are appropriate.  The redacted materials consist of personal identifying information and

30

medical diagnoses, material in which courts commonly recognize a compelling privacy interest. *See E.K. v. N.J. Dep't of Educ.*, No. 20-14409, 2020 WL 12188149, at *1-2 (D.N.J. Nov. 19, 2020).

Accordingly, the Court *sua sponte* orders that Docket Entries 71 and 85 to remain under seal, despite the parties' failure to comply with Local Civil Rule 5.3. *See M.D.*, 2024 WL 195371, at *16 (granting motion to seal under similar circumstances). "The Court advises the parties, however, that a future motion to seal – even one seeking to seal [similar] materials . . . may be denied based on repeated noncompliance with Local Civil Rule 5.3." *Id.*

### iv.   Motion to Withdraw as Attorney

Finally, the Court addresses Plaintiff's counsel's April 28, 2026 motion to withdraw as attorney. D.E. 105. "When an attorney agrees to undertake the representation of a client, he or she is under an obligation to see the work through to completion." *Haines v. Liggett Grp., Inc.*, 814 F. Supp. 414, 424 (D.N.J. 1993); *accord Kreigsman v. Kriegsman*, 150 N.J. Super. 474, 479 (App. Div. 1977). Once representation begins, an attorney "is not at liberty to abandon the case without justifiable or reasonable cause, or the consent of its client." *Kriegsman*, 150 N.J. Super. at 479.

Under Local Civil Rule 102.1, "[u]nless other counsel is substituted, no attorney may withdraw an appearance except by leave of Court." L. Civ. R. 102.1, *accord* RPC 1.16(c). Also, under Local Civil Rule 103.1, the New Jersey Rules of Professional Conduct (RPC) govern the conduct of attorneys before the District of New Jersey. L. Civ. R. 103.1(a); *accord In re Congoleum Corp.*, 426 F.3d 675, 687 (3d Cir. 2005) (citing *United States v. Balter*, 91 F.3d 427, 435 (3d Cir. 1996)). The Court generally looks to New Jersey state court for interpretation of the RPCs and modifies as necessary by federal law. *Wyeth v. Abbott Lab'ys*, 692 F. Supp. 2d 453,

455-56 (D.N.J. 2010) (citing *FMC Corp. v. Guthery*, No. 07-5409, 2009 WL 485280, at *3 (D.N.J. Feb. 25, 2009)); *accord In re Congoleum Corp.*, 426 F.3d at 687.

RPC 1.16 governs when an attorney may withdraw from representation of a client. Under some circumstances, an attorney must seek withdrawal. Under subsection (a), an attorney must withdraw if, in pertinent part:

> (1) the representation will result in violation of the Rules of Professional Conduct or other law; [or]
>
> . . . .
>
> (3) the lawyer is discharged.

RPC 1.16(a). Under other circumstances, withdrawal is permissive but not mandatory. Under subsection (b), an attorney may withdraw if, in pertinent part:

> (1) withdrawal can be accomplished without material adverse effect on the interests of the client;
>
> . . . .
>
> (4) the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement;
>
> . . . .
>
> (7) other good cause for withdrawal exists.

RPC 1.16(b). Notwithstanding the existence of a mandatory or permissive reason supporting withdrawal, a lawyer shall continue representation when ordered to do so by the Court. RPC 1.16(c); *cf. Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 217-20 (1988) (requiring representation to continue notwithstanding a conflict of interest with client). "The theory behind this provision is that, even if withdrawal is otherwise appropriate, other considerations must sometimes take precedence, such as maintaining fairness to litigants and preserving a court's

resources and efficiency." *Haines*, 814 F. Supp. at 423.  This matter is within the court's broad discretion.  *Id.* at 422; *accord In re Simon*, 206 N.J. 306, 320 n.8 (2011) (citing *Jacobs v. Pendel*, 98 N.J. 252, 255 (App. Div. 1967)).

Plaintiff's counsel argues that he must withdraw because "the circumstances of this matter have materially changed such that continued representation would be materially limited by the appearance of conflicts of interest."  Mot. to Withdraw, D.E. 105, at 7.  Plaintiff's counsel also filed a letter dated May 29, 2026, stating that counsel "believe[s] continued substantive representation of Plaintiffs is not ethically permissible under RPC 1.7 and RPC 1.16(a)(1)."  Letter, D.E. 107.  However, Plaintiff's motion addressed only permissive withdrawal under RPC 1.16(b), not mandatory withdrawal under R.P.C. 1.16(a).  *See* Mot. to Withdraw, D.E. 105, at 7.

In any event, the Court's decision on the summary judgment motions renders the motion to withdraw moot.  The decision closes the proceedings before this Court, and the Undersigned takes no position on any application by Plaintiff's counsel to withdraw at the state administrative level.

## IV.    CONCLUSION & ORDER

For the reasons set forth above,

IT IS on this 16th day of June 2026,

ORDERED as follows:

1.    Plaintiff's motion for summary judgment is **GRANTED.**

2.    Defendant's motion for summary judgment is **DENIED**.

3.    Plaintiff's counsel motion to withdraw as Plaintiff's counsel is **DENIED AS MOOT**.

4.    This matter is hereby **REMANDED** to the New Jersey Office of Special Education Programs for a new due process hearing.

5.    The Clerk of Court will close this matter.

_s/ Michael A. Hammer_____
**Hon. Michael A. Hammer,**
**United States Magistrate Judge**

**Dated**: June 16, 2026

34