**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **K.W.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**RINGWOOD BOARD OF EDUCATION d/b/a Ringwood School District,**<br><br>**Defendant.** | **Civil Action No. 24-8293 (MAH)**<br><br>**OPINION** |

**HAMMER, United States Magistrate Judge**

Presently before the Court is the motion for attorneys' fees by Plaintiff[1] K.W. ("K.W." or Plaintiff"). Mot. for Attorneys' Fees, June 30, 2026, D.E. 111. Defendant Ringwood Board of Education d/b/a Ringwood School District ("Defendant" or "Ringwood") filed a brief in opposition, to which Plaintiff filed a brief in reply. Def.'s Opp'n, July 20, 2026, D.E. 112; Pl.'s Reply, July 27, 2026, D.E. 113. Plaintiff also filed an additional letter, without leave of Court, on August 11, 2026, which the Court nonetheless has considered. D.E. 114. The Court has considered the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons set forth herein, Plaintiff's motion is **GRANTED in part**.

## I. BACKGROUND

This matter involves a dispute under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, between Ringwood and K.W., the parents of a minor child,

---

[1] To be clear, K.W. is, and has been, the only plaintiff in this case. *See* Op. & Order, June 16, 2026, D.E. 110, at 1 n.1; *see also* Compl., Aug. 5, 2024, D.E. 1 ¶ 5. To the extent the parties are quoted and refer to "Plaintiffs", the Court has retained the quote in its original form.

M.W., who requires special education services. The Undersigned's Opinion granting in part K.W.'s motion for summary judgment recounted in extensive detail the underlying facts and procedural history of this case. *See* Op. & Order, June 16, 2026, D.E. 110. Because the parties and counsel are familiar with that Opinion and the history of this litigation, the Court will not extensively discuss the underlying facts. The Court recounts only the procedural history necessary for context and resolution of this motion. *See, e.g.*, *Residences at Bay Point Condo. Ass'n, Inc. v. Standard Fire Ins. Co.*, 41 F. Supp. 3d 427, 430-31 (D.N.J. 2014) (declining to recite facts in full where the court, in an earlier opinion, already "extensively discussed the facts").

On August 31, 2023, Plaintiff filed a due process petition with the New Jersey Department of Education. Administrative Record, D.E. 97-1, at 40. Plaintiff alleged that Ringwood (1) failed to implement M.W.'s Individualized Education Program ("IEP") during the COVID-19 pandemic, thus denying M.W. the free appropriate public education ("FAPE") the IDEA requires, (2) failed to hold an IEP meeting to discuss compensatory education and services for M.W., as required by N.J.S.A. 18A:46-1.3(b), and (3) unilaterally and improperly held an IEP meeting without the parents where it was determined that M.W. did not require compensatory education or services. *Id.* at 42-43 ¶¶ 3-5. In the petition, the parents asserted they incurred expenses to provide compensatory special education and related services that Ringwood failed to provide. *Id.* at 43 ¶ 17.

On June 10, 2024, Ringwood filed a motion for summary decision, which Plaintiff opposed. *Id.* at 177. The substance and sum of Ringwood's argument was that Plaintiff's 2023 due process petition was moot based on a 2021 decision by Administrative Law Judge ("ALJ") Jude Anthony Tiscornia, who presided over a separate due process hearing filed by Ringwood in

2020. Ringwood brought that action because M.W.'s parents refused to consent to legally required re-evaluations by the school. *Ringwood Bd. of Educ. v. K.W.*, No. EDS 02167-20, 2021 WL 8322401, at *1 (N.J. Adm. Sept. 24, 2021). ALJ Tiscornia ordered the following:

> as long as respondents/parents continue to withhold consent to allow the District to perform its evaluations on M.W., the parents . . . will have waived their rights to challenge the District's placement and programming for M.W., or otherwise allege that the District's placement and programming for M.W. failed to provide a FAPE at any time after November 27, 2019."

*Id.*

ALJ Thomas R. Betancourt, who presided over K.W.'s 2023 due process petition, agreed with Ringwood. ALJ Betancourt, finding that the parents had yet to consent to the evaluations Ringwood requested, quoted ALJ Tiscornia and held that the parents "have waived their rights to challenge the District's placement and programming for M.W. at any time after November 27, 2019." *Id.* at *4.

On August 5, 2024, Plaintiff filed this matter to appeal ALJ Betancourt's decision, pursuant to 20 U.S.C. § 1415(i)(2)(A). Compl., Aug. 5, 2024, D.E. 1 ¶ 1. Plaintiff urged the Court to (1) reverse or remand the ALJ's decision, (2) declare that Defendant violated M.W.'s right to a FAPE during the COVID-19 pandemic, (3) order Defendant to provide M.W. with compensatory education, and (4) award fees and costs. *Id.* at 8. Because the appeal was made on the administrative record, and discovery was not needed, the Undersigned set briefing schedule for the parties' cross-summary judgment motions. Order, Sept. 16, 2025, D.E. 63. The Undersigned granted Plaintiff's motion and denied Ringwood's motion. Op. & Order, June 16, 2026, D.E. 110.

On June 30, 2026, Plaintiff moved for attorneys' fees under the IDEA's fee shifting provision. Mot. for Attorneys' Fees, D.E. 111. Plaintiff initially sought $45,450, which was a

50% reduction of the money owed for 158.3 hours Plaintiff's counsel, Jamie Epstein ("Mr. Epstein"), billed. D.E. 113, at 14. Ringwood opposed. Ringwood argued that Plaintiff was not a "prevailing party" under the IDEA, and thus not entitled to attorneys' fees. Alternatively, Ringwood asserted that the requested fee award must be substantially reduced. Def.'s Opp'n, July 20, 2026, D.E. 112, at 4. In reply, Plaintiff argued that Ringwood's objections were too generalized to rebut Plaintiff's evidentiary showing of reasonableness. Pl.'s Reply, July 27, 2026, D.E. 113. After the motion was fully briefed and ripe for adjudication, Mr. Epstein, without leave of Court, filed an additional letter that (1) informed the Undersigned of the District Court's opinion *Augustyn v. Wall Township Board of Education*, No. 20-5218, 2026 WL 2295126 (D.N.J. Aug. 10, 2026), (2) withdrew his voluntary 50% reduction, and (3) requested an additional five hours for work related to that letter. Letter, Aug. 11, 2026, D.E. 114. Accordingly, Plaintiff now seeks $93,900.[2]

For the reasons set forth below, the Court will grant Plaintiff's motion for fees, but will substantially reduce the fee award.

## II. DISCUSSION

Under the IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I); *see also P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 850 (3d Cir. 2006). Accordingly, the Court must first determine whether Plaintiff is a "prevailing party" under the IDEA. If so, the Court must then "calculate a reasonable amount of fees to compensate counsel for prosecuting plaintiff's IDEA claim to this point." *I.K. o/b/o Z.S. v. Montclair Bd. of Educ.*,

[2] Plaintiff incorrectly listed the revised requested amount as $91,200. D.E. 114, at 4. The correct calculations will be discussed below.

No. 16-9152, 2019 WL 5344550, at *2 (D.N.J. Aug. 28, 2019), *R&R adopted by* 2019 WL 5309523 (D.N.J. Oct. 17, 2019).

**A. K.W. is a Prevailing Party Entitled to Attorneys' Fees**

"A 'prevailing party' is one who has been awarded some relief by a court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001). The Third Circuit applies *Buckhannon*'s definition to the IDEA's fee-shifting provision. *P.N.*, 442 F.3d at 853. Prevailing parties "need not achieve all of the relief requested nor even ultimately win the case to be eligible for a fee award." *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002). Rather, prevailing parties need only "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "[A] plaintiff must show that litigation 'was a material contributing factor in bringing about the events that resulted in obtaining the desired relief.'" *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 501 (3d Cir. 2012) (quoting *Wheeler v. Towanda Area Sch. Dist.*, 950 F.2d 128, 132 (3d Cir. 1991)).

Not all relief, however, confers prevailing party status. The Third Circuit differentiated between "temporary forward-looking injunctive relief" and "backward-looking compensatory relief" in the context of the IDEA's "stay put" provision in *M.R. v. Ridley School District,* 868 F.3d 218, 230 (3d Cir. 2017). The "stay put" provision "establishes a physical right for a child with a disability to 'stay put' in his or her 'then-current educational placement.'" *Id.* (quoting 20 U.S.C. § 1415(j)). If a school violates that right, and a parent successfully sues to enforce the provision, the parent has obtained "temporary forward-looking injunctive relief," rather than a merits-based victory. Accordingly, a parent vindicating that physical right is not a "prevailing party" under the IDEA. But the "stay-put" provision also "establishes the parents' right to

monetary reimbursement or, alternatively, the child's right to compensatory education, both of which are rights to backward-looking compensatory relief and require an independent merits determination." *Id.* at 230. When the parents in *M.R.* successfully sued the school district for compensatory relief under the "stay-put" provision, "they obtained a merits-based victory[,]" which made them "eligible for an award of attorneys' fees." *Id.*

The IDEA's procedural safeguards entitle parents to "an impartial due process hearing." 20 U.S.C. § 1415(f)(1)(A). "At least in the context of the IDEA, success on the merits of entitlement to that statutory right, albeit a 'purely procedural' right, 'can confer prevailing party status.'" *Augustyn v. Wall Twp. Bd. of Educ.*, 139 F.4th 252, 259 (3d Cir. 2025) (quoting *H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch.*, 873 F.3d 406, 413 (3d Cir. 2017)).

The Third Circuit expanded on *M.R.* in *H.E.*, a case in which the parents "vindicated their right to an IDEA procedural due process hearing." 873 F.3d at 413. Vindicating that right confers "prevailing party" status regardless of the eventual outcome of the hearing, because by obtaining a due process hearing, a plaintiff "accomplishe[s] the objectives of her litigation." *Id.* (quoting *Bagby v. Beal*, 606 F.2d 411, 415 (3d Cir. 1979) (brackets omitted)).[3] The *H.E.* court held that the relief sought and obtained, "for purposes of Plaintiffs' procedural rights, [wa]s permanent relief [that] cannot be nullified later." 873 F.3d at 413.

Ringwood correctly notes that the Undersigned's June 16, 2026 Opinion "did not hold that Plaintiffs had been denied an IDEA procedural safeguard[,]" and instead "concluded that

---

[3] *Bagby* was brought under 42 U.S.C. § 1983 and its applicable fee-shifting statute, 42 U.S.C. § 1988. The Third Circuit "interpret[s] the language of § 1988 and the IDEA attorneys' fees provision in 'the same way.'" *M.R.*, 868 F.3d at 225 (quoting *In re Cmty. Bank*, 418 F.3d 277, 295-96 (3d Cir. 2005)).

disputed issues of fact required resolution through an evidentiary hearing rather than summary disposition." D.E. 112, at 9. But that is precisely one of the several reasons Plaintiff urged this Court to remand in her summary judgment motion. *See* D.E. 97, at 36 ("The existence of disputed material facts precluded summary decision under N.J.A.C. 1:1-12.5 and *Brill*."). Whether Plaintiff's arguments were persuasive to the Undersigned's June 16, 2026 Opinion will be discussed later and are not relevant at this point. But even though Plaintiff has yet to achieve anything close to merits-based success on her claims that Ringwood violated the IDEA and New Jersey's compensatory services statute, this Court's Opinion did grant Plaintiff's request to remand the matter to the state administrative level because genuine issues of material fact precluded summary disposition. "As a result, the Court believes it is constrained by the Third Circuit's opinion in *H.E.* to find that [P]laintiff is a prevailing party entitled to an award of reasonable attorneys' fees." *I.K.*, 2019 WL 5344550, at *3.

**B. Calculation of the Lodestar**

The Court must now determine the reasonableness of the amount requested by Plaintiff. "The starting point for determining any reasonable fee is to calculate a 'lodestar' amount; that is, the number of hours reasonably expended multiplied by a reasonable hourly rate." *Blakey v. Cont'l Airlines, Inc.*, 2 F. Supp. 2d 598, 602 (D.N.J. 1998). Once determined, "[t]he lodestar is presumed to be the reasonable fee." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). When calculating the lodestar amount, courts undertake three steps: (i) decide a reasonable hourly rate, (ii) multiply that rate by the number of hours reasonably expended by counsel, and (iii) alter the total amount, if adjustment is necessary. *J & J Snack Foods, Corp. v. Earthgrains Co.*, No. 00-6230, 2003 WL 21051711, at *6 (D.N.J. May 9, 2003).

**1. Mr. Epstein's Hourly Rate is Reasonable**

"A reasonable hourly rate is calculated according to the prevailing market rates in the community," which the requesting party bears the burden of establishing. *AT & T Corp. v. JMC Telecom, LLC*, No. 99-2578, 2005 WL 2086194, at *3 (D.N.J. Aug. 26, 2005) (citing *Washington v. Philadelphia Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)). The requesting party may establish that an hourly rate is reasonable "by submitting the affidavits of other attorneys in the relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience." *Id.* (quoting *P.G. v. Brick Twp. Bd. of Educ.*, 124 F. Supp. 2d 251, 261 (D.N.J. 2000)). After the prevailing party has made a prima facie showing of a reasonable hourly rate, the losing party may contest that rate, "but only with appropriate record evidence." *J & J Snack Foods*, 2003 WL 21051711, at *7 (quoting *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d. Cir. 2001)). "With such evidence, the court has great discretion to adjust the rate." *Id.* Without it, the prevailing party must be awarded fees at the requested hourly rate. *Id.*

Ringwood generally objects to the hourly rate, arguing that Plaintiff's "declarations do not address whether $600 per hour is reasonable for the specific work performed in this case – much of which involved routine administrative tasks, review of court notices, and communications with the client." D.E. 112, at 15. But Ringwood neither offers concrete evidence rebutting Plaintiff's suggested hourly rate of $600, nor establishes that an alternative hourly rate is more appropriate. Because Plaintiff has provided the requisite evidence[4] to establish that $600 per hour aligns with a reasonable market rate for similar types of education

[4] *See* Decl. of George M. Holland, Esq., D.E. 111-3, at 1-5; Aff. of Jonathan S. Corchnoy, Esq., D.E. 111-3, at 6-10.

law work, and Ringwood has not sufficiently disputed this rate, the Court finds that Plaintiff has established that Mr. Epstein's requested billing rate of $600 per hour is reasonable.

**2. Mr. Epstein Did Not Reasonably Expend 163.3 Hours**

The second step in this analysis requires the Court to determine whether counsel's time was "reasonably" expended. *Blakey*, 2 F. Supp. 2d at 604. After all, "Mr. Epstein, as the attorney for the prevailing party, is entitled to 'a reasonable fee, not a windfall.'" *J.L. v. Harrison Twp. Bd. of Educ.*, No. 14-2666, 2016 WL 4430929, at *19 (D.N.J. Aug. 19, 2016) (quoting *M.G. v. E. Reg'l High Sch. Dist.*, 386 F. App'x 186, 189 (3d Cir. 2010)). "No compensation is due for 'nonproductive' time, . . . or for hours that are 'excessive, redundant, or otherwise unnecessary.'" *Blakey*, 2 F. Supp. 2d at 604 (quoting *Hensley*, 461 U.S. at 434). Said differently, to recover fees an attorney's work must be "'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (quoting *Webb v. Bd. of Educ. of Dyer Cnty.*, 471 U.S. 234, 243 (1985)). Courts may reduce fee awards for duplication "only if the attorneys are *unreasonably* doing the *same* work." *Rode*, 892 F.2d at 1187 (quoting *Jean v. Nelson*, 863 F.2d 759, 773 (11th Cir. 1988) (emphasis in original)). The IDEA additionally provides that "whenever the court finds that . . . the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy[,] . . . the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this section." 20 U.S.C. §1415(i)(3)(F)(i).

If the prevailing party demonstrates that the requested hours are reasonable, the court may reduce fee awards only upon the adverse party's objections. *See Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989). Parties opposing fee awards must "challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of

the requested fee." *Rode*, 892 F.2d at 1183. At that point, "the burden is on the party seeking fees to justify the hours expended." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 713 (3d Cir. 2005). "To determine whether the moving party has met its burden, the court must 'go line, by line, by line through the billing records supporting the fee request.'" *C.G. & R.G. v. Winslow Twp. Bd. of Educ.*, No. 13-6278, 2015 WL 7760356, at *3 (D.N.J. Dec. 2, 2015) (quoting *Interfaith Cmty.*, 426 F.3d at 713) (quotations omitted).

The Court's role here is "not merely a passive" one; it has a "positive and affirmative function in the fee fixing process." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001). Courts "should reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed, that were distinct from the claims on which the party did not succeed, and for which the fee petition inadequately documents the hours claimed." *Id.*

Mr. Epstein asserts that he reasonably spent 163.3 hours litigating this case. D.E. 113-1, at 3. Ringwood disputes these hours, arguing that Mr. Epstein's "fee application contains excessive, vague, and unreasonable billing entries." D.E. 112, at 14. Specifically, Ringwood argues that Mr. Epstein excessively billed for various aspects of the work he performed and that the provided billing entries are insufficiently specific. *Id.* at 14-15. Ringwood also avers that many of Mr. Epstein's billed hours were not reasonably expended, including hours related to remedying self-inflicted errors that "did not advance [K.W.]'s claims," hours billed in connection with refiling the summary judgment papers, hours billed for work actually done by Ringwood, and entries that "are excessive, redundant, or reflect improper billing judgment." *Id.* at 15-18. Ringwood requests that the Court "[r]educe the requested fee award by at least seventy-five percent to account for the minimal degree of success obtained and the excessive, vague, and unreasonable nature of the billing entries." *Id.* at 22.

At first, Mr. Epstein replied that the Court should not reduce the requested fees beyond his voluntary 50% reduction for two reasons, each of which is unpersuasive. First, Mr. Epstein asserted that Ringwood "improperly seeks to reduce Plaintiffs' requested fee a second time for the same limited success already reflected in Plaintiffs' voluntary fifty-percent reduction." D.E. 113, at 8. It is unclear whether Ringwood requests an additional 75% reduction on top of Mr. Epstein's voluntary 50% reduction, or if Ringwood is suggesting a reduction of 75% in lieu of Mr. Epstein's suggested 50% reduction. But the Court need not resolve that ambiguity. Only the Court, not Mr. Epstein, "may apply further reductions [to the lodestar amount] to account for the fact that 'while Plaintiffs were successful enough to carry themselves across the statutory threshold as prevailing parties, they did not obtain excellent results.'" *I.K.*, 2019 WL 5344550, at *8 (quoting *A.V. v. Burlington Twp. Bd. of Educ.*, No. 06-1534, 2008 WL 4126254, at *7 (D.N.J. Sept. 3, 2008)). The lodestar formula—reasonable rate multiplied by reasonable hours expended—remains the same. Here, that calculation is $600 per hour multiplied by 153.1 hours (or the hours determined to have been reasonably expended), added to $200 multiplied by 10.2 hours for tasks billed at a paralegal rate, for a total of $93,900.[5] Plaintiff provides no authority to suggest that parties can introduce another variable into the lodestar equation, in the form of a voluntary reduction, to artificially deflate the lodestar value. In any event, Plaintiff's argument regarding Ringwood's suggested 75% figure is largely irrelevant because Mr. Epstein withdrew

[5] Mr. Epstein asserted that the 5.0 hours billed for the supplemental letter would increase the lodestar amount from $88,200 to $91,200. D.E. 114, at 4. But Mr. Epstein failed to consider the 1.5 hours he billed reviewing, and the 3.0 hours he billed replying to, Ringwood's opposition to this motion. *See* Billing Entries 86 & 87.

A numbered version of Mr. Epstein's contemporaneous billing record provided at D.E. 113-1 can be found under the Appendix section at the end of this Opinion. The Undersigned added billing entry 88 to consider the additional 5.0 hours Mr. Epstein requested for drafting the August 11, 2026 supplemental letter. D.E. 114.

the voluntary 50% reduction in his August 11, 2026 letter. D.E. 114. The Court will determine whether a reduction based on Plaintiff's partial success is warranted in the next section.

Next, Mr. Epstein contends that Ringwood's objections to the hours reasonably expended "fail under *Rode* and are contradicted by the record."[6] D.E. 113, at 10. Not so. As noted above, *Rode* requires parties who oppose fee awards "to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." 892 F.2d at 1183 (citing *Bell*, 884 F.2d at 713). Ringwood's opposition brief specifically challenges various portions of Mr. Epstein's billing records. In addition to the above, Ringwood challenges compensation sought "for multiple rounds of drafting related to the Motion to Seal, correction motions, withdrawal motion, supplemental withdrawal submissions, conflict waiver issues, and other matters having no bearing on the merits of Plaintiff's IDEA claims." D.E. 112, at 18. Ringwood also contends that "Plaintiffs ask the Court to accept without meaningful scrutiny a billing record that includes excessive drafting time, duplicative work, administrative tasks performed by Defendant, hours devoted to correcting counsel's own filing deficiencies, and time generated solely by the Court's concerns regarding the accuracy of counsel's submissions." *Id.* at 19.

The objections in Ringwood's opposition are "specific and clear enough that" Mr. Epstein had a fair chance on reply to defend his fee request, even if Ringwood could have been more specific. *Bell*, 884 F.2d at 720 (footnote omitted); *see also J.L. v. Harrison Twp. Bd. of Educ.*,

[6] The record does not "contradict" Ringwood's objections. Mr. Epstein argues that his "contemporaneous billing records . . . support the reasonableness of the hours included in" the instant application. D.E. 113, at 12. But that reasoning is circular. Simply providing billing records does not automatically render the content of those records reasonable. Indeed, "[t]he Court is not obligated to accept an attorney's representation of the time expended as time 'reasonably' expended." *Blakey*, 2 F. Supp. 2d at 604.

No. 14-2666, 2017 WL 1954535, at *3 (D.N.J. May 11, 2017) (finding that Mr. Epstein's contention that plaintiffs moving for attorneys' fees "are automatically and categorically entitled to all attorney's fees requested that Defendants have not specifically challenged" to be "mistaken"). Accordingly, the Court will "go line, by line, by line through the billing records supporting the fee request." *C.G. & R.G.*, 2015 WL 7760356, at *3 (quoting *Interfaith Cmty.*, 426 F.3d at 713).

Mr. Epstein billed 153.1 hours at the attorney rate and 10.2 hours at the paralegal rate for a total of 163.3 hours. D.E. 113-1, at 3 (requesting 158.3 hours); D.E. 114 (requesting an additional 5.0 hours). For the reasons set forth below, the Court finds that Mr. Epstein reasonably billed 70.7 hours at the attorney rate and 5.0 hours at the paralegal rate.

**a) Auditing Citations**

During the course of researching both the cross-summary judgment motions and the motion to withdraw, the Undersigned noticed that Plaintiff's brief in support of her summary judgment motion, D.E. 97, and Plaintiff's opposition to Defendant's summary judgment motion, D.E. 100, contained several quotations, citations, and cases that the Court could not locate after careful and extensive review. Order, May 15, 2026, D.E. 106. Accordingly, the Court ordered Plaintiff's counsel to provide PDF electronic copies of the case he cited, and to highlight where the quotation or proposition was located within that authority. *Id.* Mr. Epstein submitted a letter on June 1, 2026 that partially[7] complied with the Order. Letter, D.E. 108. Mr. Epstein admitted that he "appears to have overstated or paraphrased [a] decision's language rather than quoted it

[7] Mr. Epstein did not provide PDF electronic copies of the cases cited with the requested highlighted information.

directly." Ex. A, D.E. 108-1. He also stated that he "deeply regrets that these citation and formatting errors were not detected and corrected during final review prior to docketing[.]"

The Court struggles to comprehend that it was necessary for Mr. Epstein to bill 23.0 hours[8] auditing those deficient citations. Not only did Mr. Epstein inaccurately accuse Ringwood's filings of "suffer[ing] from some of the similar systemic citation and authority infirmities as do Plaintiffs[,]" D.E. 108, at 2 n.1,[9] Mr. Epstein "now seeks to shift the cost of responding to those concerns to Defendant." D.E. 112, at 16. These hours do not qualify as productive time, as they were not "'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Del. Valley Citizens' Council*, 478 U.S. at 561 (quoting *Webb*, 471 U.S. at 243).

Relatedly, Mr. Epstein billed 3.5 hours[10] researching "USDOE ZIRKEL LETTER CASE LAW." By Mr. Epstein's own account, the Zirkel Letter was riddled with errors. Mr. Epstein's audit acknowledged that "the accompanying explanatory parenthetical in the brief extended beyond the precise language used by the Court" and that "counsel overstated the holdings of the cited authorities." D.E. 108-1, at 5-6; *see also* Mem. Order, D.E. 106, at 2-3 (explaining the multitude of errors associated with Plaintiff's discussion of caselaw associated with the Zirkel Letter). These hours similarly do not qualify as productive time that advanced Plaintiffs' position in the litigation.

---

[8] Billing entries 60-67. Some of these entries overlap with Mr. Epstein's motion to withdraw as counsel. As the Court will explain below, these hours will also not be allowed.

[9] They did not. *See* D.E. 110, at 21.

[10] Billing entry 6.

**b) Motion to Withdraw as K.W.'s Counsel**

On April 3, 2026, Mr. Epstein moved to withdraw as Plaintiff's attorney. Mot. to Withdraw, D.E. 104. Mr. Epstein also filed a letter on June 4, 2026 regarding his pending motion to withdraw as attorney. D.E. 109. Mr. Epstein's fee request includes 4.3 hours[11] attempting to withdraw as K.W.'s counsel.

By its terms, the withdrawal issue was solely a matter between the Plaintiff and Plaintiff's counsel, as opposed to responding to a motion by the adversary or an Order of the Court. Plaintiff's counsel sought permissive withdrawal under Rule of Professional Conduct 1.16(b). The application did not advance Plaintiff's position on the merits and, ultimately, was denied as moot. *See* Op. & Order, D.E. 110, at 33. These hours expended were not "'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Del. Valley Citizens' Council*, 478 U.S. at 561 (quoting *Webb*, 471 U.S. at 243).

**c) Unsuccessful Motion to Seal**

During the first round of summary judgment briefing, Plaintiff filed under seal what was purported to be the administrative record. Am. Doc., Jan. 2, 2026, D.E. 71. On January 7, 2026, Plaintiff moved to seal the administrative record in its entirety. Mot. to Seal, D.E. 74. That motion incorrectly referred to the document Plaintiff wished to seal as D.E. 68, which was Ringwood's summary judgment motion, rather than D.E. 71, the administrative record filed under seal.

The Undersigned denied Plaintiff's motion to seal without prejudice. Order Den. Mot. to Seal, Feb. 3, 2026, D.E. 84. The Court noted that although there existed "some portions of the [a]dministrative [r]ecord containing material protected from disclosure that should be redacted

---

[11] Billing entries 57, 58, 68, and 71.

. . . Plaintiff's motion does not adequately explain how the existence of some protected material warrants the sealing of the entire [a]dministrative [r]ecord." *Id.* at 4 n.2. The Order specifically recited the deficiencies in Plaintiff's application, and provided clear guidelines for Plaintiff's benefit, to follow to ensure that any renewed motion complied with Local Civil Rule 5.3(c)(3), which governs motions to seal in the District of New Jersey. *Id.* at 5.

Plaintiff thereafter filed a flurry of submissions, none of which contained a renewed motion to seal complying with Local Civil Rule 5.3(c)(3). *See* "Exhibit to Complaint," Feb. 3, 2026, D.E. 85 (filed under seal, purported to be the entire administrative record); Mot. to Amend/Correct, Feb. 3, 2026, D.E. 86 (informing the Court that the previously filed administrative record at D.E. 71 was not actually complete, explaining that D.E. 85 constituted the complete administrative record, moving to seal D.E. 85 in its entirety, and requesting to remove D.E. 71 from the docket); Letter, Feb. 3, 2026, D.E. 87 (explaining that D.E. 86 contained errors and corrected the renewed motion to seal); "Amended Document," Feb. 14, 2026, D.E. 88 (providing an index to the administrative record); "Amended Document," Feb. 20, 2026, D.E. 89 (correcting D.E. 88, which was incomplete).

Plaintiff never filed a motion to seal the administrative record. Instead, the Court *sua sponte* sealed the documents "despite the parties' failure to comply with Local Civil Rule 5.3." Op. & Order, D.E. 110, at 31. Yet Mr. Epstein billed 13.7 hours[12] in connection with his unsuccessful attempts at filing and sealing the administrative record and filing letters with the Court, some of which he later amended. Had Mr. Epstein attempted to correctly file a motion to seal, in accordance with Local Civil Rule 5.3 and the Court's guidance, *see* D.E. 84, perhaps he

[12] Billing entries 18, 20, 30-33, 35, and 36.

would be entitled to fees on that successful motion. But "[n]o compensation is due for 'nonproductive' time," *Blakey*, 2 F. Supp. 2d at 604 (quoting *Hensley*, 461 U.S. at 434), and the Court certainly finds it unproductive to file a deficient motion to seal, particularly where the Court provided specific guidance to cure the defects. Even if Mr. Epstein "never had the district court in any prior case deny an unopposed filing of the administrative record under seal," D.E. 112-1, at 5, the Court made plain to counsel in the order denying the motion to seal that parties maintain an "obligation to make an appropriate motion." D.E. 110, at 30. Therefore, these hours will be discounted from the lodestar calculation.

Relatedly, Mr. Epstein billed 2.0 hours[13] drafting a letter "request[ing] reconsideration of, or guidance on, the District Court's current practice . . . that prevents counsel of record from accessing sealed documents that they themselves have filed in their own cases." Letter, Jan. 14, 2026, D.E. 77. This entry will be discounted from the lodestar analysis for three reasons. First, Mr. Epstein apparently filed the same letter across three cases, so the letter is not solely related to the present case. Second, Plaintiff's counsel fails to explain why counsel would need to electronically access a document "that they themselves have filed" and to which they already have access. Indeed, when parties follow the procedure set forth in Local Civil Rule 5.3(c), "a single, consolidated motion" is filed "on behalf of all parties." L. Civ. R. 5.3(c)(1). The required index "shall also include, as to each objection to seal any material, the materials to which there is an objection[,] and the basis for the objection." L. Civ. R. 5.3(c)(3)(g) and (h). In other words, all parties should have access to documents filed under seal if they follow the proper procedures set forth by the Local Civil Rules. Third, and most importantly, Mr. Epstein's letter did not advance Plaintiff's summary judgment motion.

---

[13] Billing entry 21.

**d) Refiling Summary Judgment Briefing**

After counsel informed the Court that the administrative record that was initially filed was incomplete, the Court needed to ensure that it and the parties had the complete administrative record to adjudicate the summary judgment motions under 20 U.S.C. § 1415(i)(2)(C). Additionally, it appeared that Plaintiff "s[ought] leave to withdraw Docket Entry [71] and to file an amended Motion for Judgment on the Administrative Record, amended certification, and *amended brief limited to adding references to the Administrative Record now filed as Docket Entry [85]*." Epstein Cert., Feb. 3, 2026, D.E. 87-1, at 2 ¶ 3 (emphasis added). Following a telephone conference held on February 27, 2026, the Court terminated the previous summary judgment motions, D.Es. 68 & 70, and the motion to amend, D.E. 86. The Court directed the parties "to jointly file the complete administrative record as part of any renewed motion for summary judgment" and reminded the parties that any renewed motion to seal needed to comply with Local Civil Rule 5.3. Order, Feb. 27, 2026, D.E. 95.

Based on Plaintiff's previous request to file an "amended brief limited to adding references to the Administrative Record now filed as [D.E.] 85," D.E. 87-1, at 2 ¶ 3, the Court expected any renewed summary judgment motion to contain new citations to the now-complete administrative record. Ringwood's renewed motion met that expectation. *Compare* Ringwood's First Mot. for Summ. J., D.E. 68 (no references to the administrative record) *with* Ringwood's Second Mot. for Summ. J., D.E. 99 (containing references to the administrative record). But even though Plaintiff sought leave to amend her summary judgment brief, Plaintiff simply refiled the previous motion for summary judgment. In fact, Mr. Epstein wrote in a March 12, 2026 email to defense counsel:

> fyi, you don't have to redo anything,
> I am refiling me exact same MJAR tmo.

> I am refiling the MJAR apx which was under seal – on the public docket with all PII redacted tmo.
> I am not revising or amending my MJAR at all!
> Its [sic] the same exact MJAR[14] that you filed your OPP to months ago.
> There is no reason to change your OPP and so no reason to change my reply to your OPP either!

Ex. 1, D.E. 112-1, at 1. Plaintiff's renewed opposition contained seven alterations wherein Mr. Epstein struck through portions of the old brief and inserted new dates or citations, and Plaintiff's reply brief contained new citations to Defendant's opposition but otherwise remained nearly identical to the original filings.

At bottom, Mr. Epstein billed 10.8 hours[15] to upload and review duplicative documents. Contrary to Mr. Epstein's assertion that the Court "*sua sponte* struck" the original cross-summary judgment motions, it was Mr. Epstein who sought to file an "amended brief limited to adding references to the Administrative Record now filed as [D.E.] 85." D.E. 87-1, at 2 ¶ 3. It is reasonable to assume that Plaintiff's counsel knows that the IDEA requires "that the court shall receive the records of the administrative proceedings." 20 U.S.C. § 1415(i)(2); *see also F.V. v. Cherry Hill Twp. Bd. of Educ. Members*, No. 22-4401, 2022 WL 16710438, at *4 (D.N.J. Nov. 4, 2022). Had Mr. Epstein correctly filed the entire administrative record in the first place, rather than "selected portions[,]", D.E. 87-1, at 2 ¶ 4, which required supplementation, the new round of briefing likely would have been unnecessary. In any event, the Court cannot conclude that all

---

[14] Plaintiff did not, in fact, file "the same exact MJAR" he filed "months ago." Plaintiff filed a version that was downloaded from PACER containing the CM/ECF-generated heading. So when Plaintiff refiled the motion and opposition to Ringwood's motion, both the old heading and newly generated heading overlapped, causing mild confusion when reviewing and citing to the briefs. *See* Op. & Order, D.E. 110, at 3 n.5 (explaining to reader how to decipher the Opinion's citations).

[15] Billing entries 47, 48, 50, 51, and 53-56.

10.8 hours on the second round of summary judgment briefing materially advanced Plaintiff's case. However, the Court also recognizes that the motions did need to be re-filed. Accordingly, the Court will reduce the billing to 5.0 hours.

Relatedly, Mr. Epstein billed 4.0 hours[16] redacting the administrative record and organizing it into seven volumes before refiling the summary judgment papers. But this work was duplicative, because Mr. Epstein also billed 4.0 hours[17] reviewing and organizing the administrative record before filing the initial summary judgment papers. The Court will disallow 4.0 of these hours.

**e) Fee Litigation and Demand Letters**

After the Court's decision granting Plaintiff a remand, Mr. Epstein billed 25.0 hours[18] on the instant fee application and 3.7 hours[19] related to drafting and sending demand letters. The Court finds this time to be excessive. After all, "Mr. Epstein is very experienced with fee litigation." *C.C. v. E. Camden Cnty. Reg. Sch. Dist.*, No. 15-5936, 2017 WL 1170832, at *4 (D.N.J. Mar. 29, 2017) (quoting *C.G. & R.G.*, 2015 WL 7760356, at *5); *see also T.B. v. Mount Laurel Bd. of Educ.*, No. 09-4780, 2012 WL 1079088, at *6 n.9 (D.N.J. Mar. 30, 2012) (collecting other cases involving Mr. Epstein and fee applications).

---

[16] Billing entry 44.

[17] Billing entry 2.

[18] Billing entries 74-76, 79, 83-87, and 88.

[19] Billing entries 72, 73, 77, 78, and 80-82.

For example, Mr. Epstein billed 1.5 hours[20] doing legal research on attorney rates surveys. But neither Mr. Epstein's certification nor brief in support of the fee application mention such surveys. Therefore, the Court cannot permit those hours.

Mr. Epstein also billed 7.0 hours doing legal research on prevailing parties under the IDEA.[21] But the discussion of prevailing parties across Plaintiff's moving and reply briefs spanned only six pages and contained only four cases. Recognizing that Plaintiff's prevailing party status here was not as clear as in *I.K.* or *H.E.*, the Court finds that allowing 2.5 hours of research to be more than reasonable. Mr. Epstein also billed 3.0 hours[22] to reply to Ringwood's opposition to the instant fee application. Although Plaintiff's reply brief largely rehashes the prevailing-party arguments made in the moving brief, Ringwood does not meaningfully challenge this work, and the Court will allow the full 3.0 hours. In total, the Court finds that Mr. Epstein reasonably billed 14.0 hours in connection with filing the instant motion. *See Musa v. Soar Corp.*, No. 13-2847, 2015 WL 619615, at *7 (E.D. Pa. Feb. 12, 2015) (reducing "time allowed for the drafting of Plaintiff's underlying petition for attorney's fees by 50 percent because Plaintiff undertook no effort to eliminate time billed for Plaintiff's unsuccessful claims").

After the motion was fully briefed, Mr. Epstein attempted to add another 5.0 hours[23] onto his bill by filing the August 11, 2026 letter, without leave of Court, to inform the Court that a recent District Court opinion, on remand, applied binding Third Circuit precedent from *Augustyn*

---

[20] Billing entry 74.

[21] Billing entries 75 and 76.

[22] Billing entry 87.

[23] Billing entry 88.

*v. Wall Township Board of Education*, 139 F.4th 252 (3d Cir. 2025). Letter, Aug. 11, 2026, D.E. 114. The Undersigned appreciates that counsel wanted to bring potentially relevant caselaw to the Court's attention. However, the Court questions how, if Plaintiff's counsel researched prevailing parties under the IDEA for 7.0 hours, he did not identify the Third Circuit's decision in *Augustyn.* The Third Circuit's decision in *Augustyn* not only discussed prevailing parties under the IDEA, but also remanded the matter to the District Court to reanalyze its reduction of the attorney fee award. Although the District Court opinion applying *Augustyn* was not decided until after the instant motion was fully briefed, the Third Circuit's decision that precipitated the new District Court ruling issued more than a year before Mr. Epstein moved for fees. Additionally, Mr. Epstein filed this letter requesting additional fees without permission from the Court. *See* L. Civ. R. 7.1(d)(6) ("No sur-replies are permitted without permission of the Judge to whom the case is assigned."). In fact, the Court's independent research had already identified the Third Circuit's opinion in *Augustyn*. Therefore, although the Court considers below Mr. Epstein's withdrawal of the volunteered 50% reduction, the Court will reduce the 5.0 hours to 2.0 hours. Finally, the Court will allow the full 3.7 hours Mr. Epstein billed drafting and sending demand letters, since Ringwood has not objected to those time entries.

**f) Initial Summary Judgment Briefing**

Mr. Epstein billed 27.6 hours[24] researching, drafting, and file the first motion for summary judgment, 12.5 hours[25] opposing Ringwood's summary judgment motion, 9.0 hours[26]

---

[24] Billing entries 5, 8-10, 13 and 14.

[25] Billing entries 22-24.

[26] Billing entries 26 and 27.

replying to Ringwood's opposition, and 12.5 hours[27] reviewing Ringwood's filings, for a total of 63.1 hours. The "principal concern is whether the time claimed is reasonable for the services performed." *Maldonado v. Houstoun*, 256 F.3d 181, 185 (3d Cir. 2001). For a variety of reasons, the Court cannot conclude that 63.1 hours is reasonable.

Mr. Epstein billed 27.6 hours researching and drafting a summary judgment motion that included a 29-page brief. *See* D.E. 97. The substance of Plaintiff's argument starts on page 13 of that brief. *See* D.E. 97, at 13. And that brief contained numerous cases and citations that the Court could not identify. D.E. 106. Accordingly, the Court will reduce the hours Mr. Epstein can bill for the initial summary judgment motion by half and allow 13.8 hours.

Mr. Epstein billed 12.5 hours researching and drafting a 13-page brief opposing Ringwood's summary judgment motion. *See* D.E. 100. The substance of Plaintiff's argument begins on page 6 of that brief. *See id.* at 6. More than three pages are dedicated to the baseless assertion that Ringwood was procedurally barred from filing a cross-summary judgment motion, wherein Plaintiff relied on nonexistent authorities. *See id.* at 6-10. The remaining arguments largely reiterate the points made in Plaintiff's moving brief, D.E. 97, and Plaintiff's reply, D.E. 104. Accordingly, the Court will allow 4.0 of those hours.

Mr. Epstein billed 9.0 hours replying to Ringwood's opposition. D.E. 104. The reply brief directly counters the points argued in Ringwood's opposition brief. Though Ringwood's opposition to the instant fee application specifically objects to the time Mr. Epstein spent researching and drafting the initial summary judgment motion and the opposition to Ringwood's motion, Ringwood does not appear to contest the hours Mr. Epstein billed in connection with drafting and filing the reply brief. *See generally* D.E. 112. Additionally, the Court did not

[27] Billing entries 12, 25, 28, and 29.

identify any troublesome cases, citations, or quotations in Plaintiff's reply. *See* D.E. 106 (taking issue with cited authority in Plaintiff's summary judgment motion, D.E. 97, and opposition, D.E. 100, but Plaintiff's reply, D.E. 104). The Court will allow these hours in full.

Finally, Mr. Epstein billed 12.5 hours reviewing and analyzing Ringwood's filings. As with Plaintiff's reply papers, Ringwood's opposition to the instant motion does not explicitly object to the time Mr. Epstein spent reviewing Ringwood's submissions. So the Court will allow these hours in full.

Accordingly, for the period between entering his notice of appearance to present, the Court finds that Mr. Epstein reasonably billed 70.7 hours[28] at the attorney rate and 5.0 hours[29] at the paralegal rate, for a lodestar amount of $43,420.[30]

### C. A Slight Adjustment of Fees Based on Overall Success is Warranted

Where, as here, Plaintiff only partially succeeded on her claims, the Court need not award the full lodestar amount. *A.M. ex rel. A.J. v. Interboro Sch. Dist.*, No. 25-3083, 2026 WL 1283769, at *3 (E.D. Pa. May 11, 2026). After all, to determine a reasonable fee, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. Mr. Epstein, relying on the *Hensley*, originally only sought 50% of the lodestar amount, because "the relief obtained

---

[28] The Court takes no issue with billing entries 1, 7, 11, 15-17, 19, 34, 37-43, 45, 46, 52, 59, 69, and 70, which totaled 6.7 hours. Combined with the 13.8 hours allowed for initial summary judgment briefing, 4.0 hours allowed for opposing Ringwood's summary judgment motion, 9.0 hours replying to Ringwood's opposition, 12.5 hours reviewing and analyzing Ringwood's submissions, 5.0 hours allowed for reuploading the second round of summary judgment motions, 3.7 hours drafting demand letters, 14.0 hours in connection with the instant attorney fee application, and 2.0 hours drafting the supplemental letter brief, the total comes to 70.7 reasonable hours billed at the attorney rate.

[29] The Court takes no issue with billing entries 2-4. These billing entries totaled 5.0 hours. All other billing entries at the paralegal rate were otherwise disallowed based on the above.

[30] ($600*70.7) + ($200*5.0) = $43,420.

restored Plaintiffs' statutory right to an IDEA due process hearing rather than finally resolving the underlying FAPE claims." D.E. 111, at 17-19. Ringwood asserted the Court should reduce the lodestar amount by 75% or more. D.E. 112, at 22. Mr. Epstein disagreed, *see generally* D.E. 113, and then completely withdrew the voluntary 50% reduction, D.E. 114.

Well-established principles guide the Court's determination. "Where, as here, the plaintiff has achieved only a partial success, a lodestar calculation of attorneys fees may result in an excessive amount." *Field v. Haddonfield Bd. of Educ.*, 769 F. Supp. 1313, 1322 (D.N.J. 1991). "How to measure the degree of success is left to the court's discretion." *Mancini v. Northampton Cnty.*, 836 F.3d 308, 321 (3d Cir. 2016). "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37.

"Where a plaintiff presents different claims for relief that are based on unrelated facts and legal theories, courts should exclude fees for time expended in unsuccessful claims." *Field*, 769 F. Supp. at 1322. "However, where '[m]uch of counsel's time . . . [was] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis[,] . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *Id.* (alterations in original) (quoting *Hensley*, 461 U.S. at 435).

The reductions in the previous section were necessary to calculate a reasonable lodestar amount. This section considers the separate issue of the degree of success Plaintiff obtained. The two different inquiries can lead to two separate reductions. "Certainly, a court can make reductions in light of 'the results obtained' if this factor was for some reason 'not already

subsumed' in its calculation of the lodestar." *Augustyn*, 139 F.4th at 258 (quoting *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 128-29 (3d Cir. 2017)).

The Court will now analyze the relief Plaintiff requested, the relief Plaintiff received, and what adjustments, if any, are necessary to determine a reasonable fee. The Court is mindful that "the reduction analysis for the fees generated from litigating the fee petition is independent from the reduction analysis applied to the underlying petition." *United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 142 (3d Cir. 2018). Accordingly, only the 39.3 hours[31] allowed in connection with researching, drafting, and filing the summary judgment motion, opposition, and reply are subject to any reduction here.

Plaintiff's summary judgment motion offered five arguments supporting relief: (1) that the ALJ's summary decision under N.J.A.C. 1:1-12.5 violated the IDEA because Ringwood failed to timely file a sufficiency challenge, and Plaintiff did not otherwise consent to adjudication on summary decision, so Plaintiff was entitled to a full evidentiary hearing, (2) ALJ Betancourt improperly relied on ALJ Tiscornia's 2021 decision, (3) ALJ Betancourt incorrectly failed to analyze the merits of N.J.S.A. 18A:46-1.3, including whether M.W. was entitled to compensatory services and whether Ringwood followed the statute's requirements, (4) Ringwood was required to provide M.W. a FAPE because it accepted federal funds to provide a student with a FAPE, and (5) there existed genuine issues of material fact precluding a ruling on summary decision. *See* Op. & Order, D.E. 110, at 19.

The Court did not address argument (4) beyond a footnote. *Id.* at 19 n.10. The Court, while questioning "whether the use of summary decision was appropriate here," *id.* at 26, did not

[31] As noted above, the Court allowed 13.8 hours moving for summary judgment, 4.0 hours opposing Ringwood's motion, 9.0 hours replying, and 12.5 hours reviewing and analyzing Ringwood's submissions, totaling 39.3 hours.

affirmatively conclude that its use violated the IDEA, as argument (1) suggested. Although the Court found that ALJ Tiscornia's decision should not have precluded the parents' due process petition regarding New Jersey's compensatory services statute, the Court's decision ultimately did not rest on ALJ Betancourt's reliance on ALJ Tiscornia's decision. D.E. 110, at 23. Additionally, the Court did not remand because ALJ Betancourt failed to analyze N.J.S.A. 18A:46-1.3, as argument (3) suggested. Instead, the Court narrowly decided the cross-summary judgment motions on argument (5): "there existed genuine issues of material fact that should have precluded summary decision in the state administrative proceeding." *Id.*

The Court, however, did not rely on *any* of the disputed facts offered by Plaintiff's moving brief, which were: "Ringwood failed to implement M.W.'s IEP during COVID; services mandated by the IEP were not delivered; Ringwood failed to provide a 1:1 aide; Ringwood never convened a valid IEP Team Meeting to consider compensatory services; and the unilateral June 2, 2021 meeting predetermined the outcome." D.E. 97, at 36-37. Rather, the disputed fact underlying the Court's decision was whether Ringwood adequately provided notice of the June 2, 2021 IEP meeting to M.W.'s parents, as N.J.A.C. 6A:14-2.3(k) requires, not whether that meeting was valid or predetermined the outcome. D.E. 110, at 27. After all, "LEAs are permitted to hold IEP meetings without parents, so long as records are maintained detailing the efforts the district undertook to provide the parents with notice." *Id.* (quoting N.J.A.C. 6A:14-2.3(7)).

In other words, if Ringwood provided adequate notice of the June 2, 2021 compensatory services IEP meeting, and the parents failed to attend, then Ringwood's actions would have complied with the IDEA and New Jersey's compensatory education statute. In that scenario, regardless of ALJ Betancourt's reliance on ALJ Tiscornia's decision, this Court could have

affirmed the summary decision denying Plaintiff's due process petition. But the record before the Court lacked sufficient evidence to establish proper notice of the June 2, 2021 IEP meeting. So the Court remanded the matter to the New Jersey Office of Special Education Programs to conduct a new hearing, as a new hearing would better establish the record before the ALJ. In sum, Plaintiff narrowly prevailed on, at most, two of five arguments on summary judgment, and Plaintiff provided zero of the disputed facts that supported the Court's decision.[32]

Plaintiff now asserts that no reduction based on partial success is justified because of the recent decision in *Augustyn*, 2026 WL 2295126. D.E. 114, at 2. The Undersigned disagrees. In *Augustyn*, the Third Circuit made clear that "the procedural nature of [a plaintiff]'s victory, without certainty of success on her underlying substantive claim on remand, [does not] justify a reduction." *Augustyn*, 139 F.4th at 261. But unlike in *Augustyn*, K.W.'s "statutory right to a due process hearing" was not the only claim before this Court. *Id.* Plaintiff also asked, and this Court declined, to "resolve the COVID-era compensatory-education claims on their own record." D.E. 97-3, at 34. Additionally, as noted above, although the Court questioned the ALJ's use of a summary decision on these facts, the Court declined to "find that the ALJ violated IDEA's hearing requirements." *Id.* at 13. In other words, Plaintiff's summary judgment motion also requested substantive rulings that the Court's narrow holding did not reach. And the Court did not get anywhere close to "declaring that [Ringwood] violated M.W.'s right to a [FAPE] during

---

[32] An argument might be made that Plaintiff's fees for these tasks should therefore be reduced by 60%. But if "a plaintiff raises multiple claims of relief based on related legal theories and a common core of facts, the 'lawsuit cannot be viewed as series of discrete claims.'" *MP ex rel. VC v. Parkland Sch. Dist.*, No. 20-4447, 2021 WL 5177012, at *9 (E.D. Pa. Nov. 5, 2021) (quoting *Rena C. v. Colonial Sch. Dist.*, 840 F. App'x 676, 682 (3d Cir. 2020)). Because many of Plaintiff's arguments on summary judgment overlapped, the Court declines to take that approach.

the COVID-19 pandemic" or "ordering [Ringwood] to provide M.W. with compensatory education[,]" which Plaintiff also sought in bringing this appeal. Compl., D.E. 1, at 8 ¶¶ c, d.

The Court does not reduce based on degree of success because Plaintiff received a procedural victory. Although Plaintiff's initial fee application suggested a 50% reduction was appropriate based on Plaintiff's solely procedural victory, the Third Circuit has cautioned against this kind of reduction. *Augustyn*, 139 F.4th at 261. Rather, the Court reduces based on degree of success because (1) throughout this litigation, Plaintiff sought more than, but only received, a remand, and (2) none of Plaintiff's arguments in support of remanding the case was particularly persuasive. In other words, Plaintiff did not "'accomplish[] the objective[] of her litigation' before the District Court in its entirety, irrespective of how the underlying claim would be resolved." *Id.* (second alteration in original) (quoting *H.E.*, 873 F.3d at 413) (internal quotations omitted). Given Plaintiff's limited success, the Court finds it appropriate to reduce the billable amount for the 39.3 hours allowed for Plaintiff's summary judgment briefing by 25%, or to $17,685.[33] Combined with the 31.4 hours billed at the attorney rate that are not subject to this reduction, and the 5.0 hours billed at the paralegal rate, the Court concludes that Plaintiff is entitled to $37,525 in attorneys' fees.

**D. Mr. Epstein's Fee Application Shocks the Conscience**

"If, after following the proper procedures, the Court remains convinced that Epstein's hourly rate and hours billed are outrageously excessive, it retains the discretion to award whatever fee it deems appropriate, including no fee at all." *M.G.*, 386 F. App'x at 189. "A Court may entirely deny attorney's fees under the IDEA . . . where the fee requested is so 'grossly exaggerated or absurd,' that the request 'shocks the conscience of the court.'" *C.G. & R.G.*, 2015

[33] (39.3*$600)*75% = $17,685.

WL 7760356, at *8 (first quoting *Hall v. Borough of Roselle*, 747 F.2d 838, 842 (3d Cir. 1984) and then quoting *Fair Housing Council of Greater Washington v. Landrow*, 999 F.2d 92, 97 (4th Cir. 1993)). Courts should consider whether "counsel acted with sufficient integrity in submitting the request to the court . . . and whether counsel engaged in inappropriate reaching for excessive fees." *Id.* (citations omitted). As with the doctrine allowing courts to reduce a fee award based on limited success, courts may also reduce an award when it shocks the conscience even if the court previously reduced unreasonably expended hours. *See C.G. v. Winslow Twp. Bd. of Educ.*, 704 F. App'x 179, 182-83, 183 n.5 (3d Cir. 2012) (affirming the soundness of the district court's awarded fee, noting that "[c]ast against [Mr. Epstein]'s well-documented history of egregious conduct in fee requests in the District of New Jersey and of grossly overstating his fees, the inappropriate reaching for fees in this case shocked the conscience of the District Court") (internal quotations and citations omitted).

"Mr. Epstein engaged in inappropriate reaching for excessive fees in this case." *C.G. & R.G.,* 2015 WL 7760356, at *9. Mr. Epstein originally requested $45,450 in fees, or 50% of $90,900 he billed. *See* D.E. 113, at 14. Then Mr. Epstein withdrew the voluntary deduction and added an additional 5.0 hours to his bill, for a total amount of $93,900. But the true lodestar amount is $43,420, which the Court reduced to $37,525 based on Plaintiff's limited success. Mr. Epstein reasonably expended 75.7 hours, or approximately 46.4% percent, of the 163.3 total hours billed in this case. Courts have applied the shock the conscience standard even where Mr. Epstein has reasonably expended a higher percentage of hours. *See M.G. v. E. Reg. High Sch. Dist.*, No. 08-4019, 2009 WL 3489358, at *11 (D.N.J. Oct. 21, 2009), *rev'd on other grounds*, 386 F. App'x 186 (3d Cir. 2010) (applying a 50% shock-the-conscience reduction where Mr. Epstein reasonably expended, at most, 53.6 of 72.7, or 73.7%, of the hours he billed); *C.G. &*

*R.G.*, 2015 WL 7760356, at *9 (applying a 50% shock-the-conscience reduction where Mr. Epstein reasonably expended 218.4 of 357, or 61%, of the hours he billed). This application, unfortunately, adds to Mr. Epstein's "history of grossly overstating his fees." *C.G. & R.G.*, 2015 WL 7760356, at *9 (collecting cases); *see also F.V. v. Cherry Hill Twp. Bd. of Educ.*, No. 21-18096, 2023 WL 2662697, at *12 n.17 (D.N.J. Mar. 28, 2023) (also collecting cases).

In *C.G. & R.G.*, the Court concluded that "'[c]onsidered together, the inaccuracies and exaggerations that plague Epstein's fee request' suggest 'that his submission constituted an improper attempt to maximize his fee award, as opposed to a good-faith representation of his billing rate and the hours he reasonably expended[.]'" 2015 WL 7760356, at *9 (alteration in original) (quoting *M.G.*, 386 F. App'x at 189). The record compels the same conclusion here. Mr. Epstein improperly billed 87.6 hours, inflating his bill by $50,480. As noted above, these hours were excessive, duplicative, or wholly a result of Mr. Epstein's self-inflicted conduct throughout this litigation. It further shocks the Court that, after billing his client 4.3 hours for attempting to withdraw as counsel, Mr. Epstein was suddenly able to resolve the "significant conflict implicating his continuing obligations" under the Rules of Professional Conduct, D.E. 109, and bill the client an additional 28.7 hours in an effort to seek attorneys' fees.

Additionally, according to Mr. Epstein's certification, "[u]nder [the] amended Legal Services Agreement, Plaintiffs are responsible for paying $200 per hour of [Mr. Epstein's] $600 per hour legal services and [Mr. Epstein] may seek the balance of [his] fees from Defendants via fee-shifting." D.E. 111-2, at 3 ¶ 14. Mr. Epstein's practice of charging his client while concurrently moving for attorneys' fees might be understandable if he sought the $400 balance of his fees from Ringwood under the IDEA's fee-shifting provision. But Mr. Epstein did not move to "seek the balance" of his fees—he sought the full $600 rate. Seeking $600 per hour under the

IDEA's fee-shifting provision, while simultaneously drawing $200 per hour from the client for the very same work, is clearly overreach.

Furthermore, Mr. Epstein completely withdrew his voluntary 50% reduction. That reduction was based on faulty grounds, as it was fully apparent to the Court that the Third Circuit's opinion in *Augustyn* precluded an across-the-board 50% reduction purely based on Plaintiff's limited procedural success. But at least the voluntary reduction somewhat "reflect[ed] counsel's exercise of billing judgment." D.E. 111-4, at 17. After all, the $45,450 initially sought nearly aligned with the actual lodestar value of $43,420. By now seeking the full amount of $93,900, the Court must question whether "counsel acted with sufficient integrity in submitting the request to the court." *C.G. & R.G.*, 2015 WL 7760356, at *8.

Mr. Epstein "has forced yet another court, 'once again, to divert its precious limited resources from the hundreds of other cases on its docket in need of attention.'" *F.V.*, 2023 WL 2662697, at *12 n.17 (quoting *J.L.*, 2017 WL 1954535, at *6). Given the above, Mr. Epstein's inappropriate reaching for excessive fees shocks the conscience of the Court. The Court therefore exercises its discretion to reduce Mr. Epstein's fees by another 25%, to $28,143.75.[34]

## III. CONCLUSION

For the reasons set forth above, Plaintiff's motion is **GRANTED IN PART**. Plaintiff is entitled to $28,143.75 in attorneys' fees. The Court shall issue an accompanying Order.

---

[34] Courts in this District have denied in full Mr. Epstein's requested fees. *J.L.*, 2017 WL 1954535, at *6 (collecting cases). The Court will not go that far. But Mr. Epstein should be fully aware not all fees billed should necessarily be included in a fee request. *T.B. v. Mount Laurel Bd. of Educ.*, No. 09-4780, 2011 WL 2473327, at *8 (D.N.J. June 20, 2011) ("Mr. Epstein should carefully consider the appropriate billing rate; whether the billed tasks are appropriately billed at the rate earned by an experienced attorney; whether he has been sufficiently careful to avoid any mistakes or miscalculations; and whether the overall amount is reasonable in light of the facts of this case. His fee request should also not seek compensation for deficient performance, such as his preparation of the opposition brief that was not considered, as well as the unsuccessful motion for late filing of that brief.").

*s/ Michael A. Hammer*
**United States Magistrate Judge**

Dated: **August 25, 2026**

## IV. APPENDIX

| # | Date | Description | Time | Fee |
|---|---|---|---|---|
| 1 | 12/1/25-12/4/25 | Communications with client regarding entry of appearance and drafting and filing motion for judgment on the administrative record | 1.0 | $600.00 |
| 2 | 12/5/2025 | REVIEW/ORGANIZE/INDEX ADM RECORD (327 PAGES)(PLR) | 4.0 | $800.00 |
| 3 | 12/20/2025 | COMMUNICATIONS W/ PL TAKING OVER CASE | 0.5 | $100.00 |
| 4 | 1/2/2026 | COMMUNICATIONS W/ PL MJAR | 0.5 | $100.00 |
| 5 | 1/2/2026 | LR; MJAR OPINIONS | 2.1 | $1,260.00 |
| 6 | 1/24/2026 | LR; USDOE ZIRKEL LETTER CASE LAW | 3.5 | $2,100.00 |
| 7 | 1/2/2026 | D&F: NOTICE OF APPEARANCE [69] | 0.3 | $180.00 |
| 8 | 12/29/2025 | RF, LR, 1ST DRAFT MJAR | 4.5 | $2,700.00 |
| 9 | 12/30/2026 [sic] | RF, LR, 2D DRAFT MJAR. | 5.5 | $3,300.00 |
| 10 | 1/2/2026 | D&F: First MJAR (Attachments: #1 Text of Proposed Order, #2 Statement, #3 Brief, #4 Text of Proposed Order) [70] | 8.0 | $4,800.00 |
| 11 | 1/2/2026 | REVIEW DF SUB OF ATY [67] | 0.1 | $60.00 |
| 12 | 1/3/2026 | R&A: DF MJAR [68] | 3.0 | $1,800.00 |
| 13 | 1/1/2026 | 2D DRAFT MJAR | 7.5 | $4,500.00 |
| 14 | 1/2/2026 | D&F: AMEND MJAR | 1.5 | $900.00 |
| 15 | 1/5/2026 | REVIEW CT MJAR DEADLINE NOTICE | 0.2 | $120.00 |
| 16 | 1/5/2026 | REVIEW CT NOTICE: DF MJAR DEFICIENT | 0.2 | $120.00 |
| 17 | 1/5/2026 | REVIEW CT NOTICE; DF SUB OF ATY | 0.1 | $60.00 |
| 18 | 1/7/2026 | LR, RF, D&F: MOTION TO SEAL | 4.5 | $2,700.00 |
| 19 | 1/7/2026 | REVIEW CT NOTICE; MOTION TO SEAL | 0.1 | $60.00 |
| 20 | 1/12/2026 | R&A: DF FILED MJAR SUMF EXHIBIT [68] | 1.5 | $900.00 |
| 21 | 1/14/2026 | LR, D&F; STANDING ORDER 2025-05 LTR [77] | 2.0 | $1,200.00 |
| 22 | 1/18/2026 | LR, 1ST DRAFT: OPP DF MJAR [68] | 4.5 | $2,700.00 |
| 23 | 1/19/2026 | LR, 2D DRAFT: OPP DF MJAR [68] | 3.0 | $1,800.00 |
| 24 | 1/20/2026 | D&F: OPP [78] TO DF MJAR [68] | 5.0 | $3,000.00 |
| 25 | 1/21/2026 | LR, R&A: DF OPP [79] TO PL MJAR | 4.5 | $2,700.00 |

| | | | | |
|---|---|---|---|---|
| 26 | 1/25/2026 | LR, 1ST DRAFT MJAR REPLY TO DF OPP[78] | 5.0 | $3,000.00 |
| 27 | 1/26/2026 | D&F; FINAL REPLY DRAFT [82] TO DF OPP [78] | 4.0 | $2,400.00 |
| 28 | 1/27/2026 | R&A; DF REPLY [81] TO PL OPP [78] | 2.5 | $1,500.00 |
| 29 | 1/29/2026 | R&A: DF AMENDED REPLY [83] TO PL OPP [78] | 1.0 | $600.00 |
| 30 | 2/3/2026 | R&A: ORDER [84] denying without prejudice [74] Motion to Seal | 0.5 | $300.00 |
| 31 | 2/3/2026 | RF, D&F; ADM RECORD NOT UNDE SEAL, REDACT PII [85, 85-1] | 2.5 | $1,500.00 |
| 32 | 2/3/2026 | RF, D&F MOTION [86] to AMEND/CORRECT MJAR [71] | 3.0 | $1,800.00 |
| 33 | 2/3/2026 | RF, D&F: LETTER [87] RE: AMEND/CORRECT MOTION [86] | 0.5 | $300.00 |
| 34 | 2/5/2026 | REVIEW CT NOTICE: AMEND/CORRECT [86] | 0.1 | $60.00 |
| 35 | 2/10/2026 | RF, D&F; ADD ADM RECORD INDEX [88] (PLR) | 1.0 | $200.00 |
| 36 | 2/10/2026 | RF, D&F; CORRECT ADM RECORD INDEX [88] (PLR) | 0.2 | $40.00 |
| 37 | 2/10/2026 | REVIEW CT ORDER [90]: TEL CONF | 0.1 | $60.00 |
| 38 | 2/23/2026 | REVIEW DF RESPONSE [92] to [90] | 0.1 | $60.00 |
| 39 | 2/23/2026 | D&F: RESPONSE [93] to [90] | 0.3 | $180.00 |
| 40 | 2/25/2026 | REVIEW DF 2D RESPONSE [93] to [90] | 0.1 | $60.00 |
| 41 | 2/25/2026 | REVIEW CT ORDER [94]: TEL CONF | 0.1 | $60.00 |
| 42 | 2/27/2026 | PREP/ATTEND STATUS CONF W/ MAH | 0.5 | $300.00 |
| 43 | 2/27/2026 | R&A: CT ORDER [95] TERMINATING PENDING MOTIONS | 0.3 | $180.00 |
| 44 | 3/12/2026 | RF, D&F: [96] REDACT ADM RECORD PII, REORGANIZE 7 VOL. | 4.0 | $800.00 |
| 45 | 3/12/2026 | COMMUNICATIONS W/ ATY: ADM RECORD | 0.5 | $300.00 |
| 46 | 3/13/2026 | MORE COMMUNICATIONS W/ ATY: REFILE MJAR | 0.3 | $180.00 |
| 47 | 3/13/2026 | RF, LR, D&F: MJAR [97] (EDIT 2D MJAR [70]) | 0.5 | $300.00 |
| 48 | 3/13/2026 | RF, D&F; LTR MJAR [97] | 0.3 | $180.00 |
| 49 | 3/13/2026 | REVIEW CT [97] NOTICE | 0.1 | $60.00 |
| 50 | 3/14/2026 | R&A: DF MJAR [99] | 1.5 | $900.00 |
| 51 | 3/14/2026 | D&F; OPP [100] TO DF MJAR [99] | 1.5 | $900.00 |
| 52 | 3/16/2026 | REVIEW CT [100] NOTICE | 0.1 | $60.00 |

| | | | | |
|---|---|---|---|---|
| 53 | 3/27/2026 | R&A; DF [101] OPP | 1.0 | $600.00 |
| 54 | 3/27/2026 | R&A; DR REPLY [102] TO [97] | 1.0 | $600.00 |
| 55 | 3/30/2026 | R&A; DR REPLY [103] TO PL OPP [100] TO MJAR [99] | 1.0 | $600.00 |
| 56 | 4/3/2026 | LR, RF, D&F: REPLY TO DF OPP [101] TO MJAR [97] | 4.0 | $2,400.00 |
| 57 | 4/27/2026 | COMMUNICATIONS W/ PL: WITHDRAW | 0.5 | $300.00 |
| 58 | 4/28/2026 | LR, RF, D&F; WITHDRAW MOTION [105] | 3.0 | $1,800.00 |
| 59 | 4/28/2026 | REVIEW CT NOTICE [105] . . . | 0.1 | $60.00 |
| 60 | 5/15/2026 | R&A CT ORDER [106] | 1.5 | $900.00 |
| 61 | 5/17/2026 | AI AUDIT EVERY LEGAL CITATION [104] | 3.0 | $1,800.00 |
| 62 | 5/18/2026 | AI AUDIT EVERY LEGAL CITATION [100] | 4.5 | $2,700.00 |
| 63 | 5/19/2026 | AI AUDIT EVERY LEGAL CITATION [97] | 6.0 | $3,600.00 |
| 64 | 5/28/2026 | LR,RF: 1ST DRAFT ORDERED [106] LETTER | 2.5 | $1,500.00 |
| 65 | 5/29/2026 | D&F; FINAL ORDERED [106] LETTER [108] | 2.0 | $1,200.00 |
| 66 | 5/29/2026 | RF, LR, D&F:; ORDER [106] CONFLICT LTR [107] | 0.5 | $300.00 |
| 67 | 6/1/2026 | D&F; FINAL ORDERED LETTER [108] | 3.0 | $1,800.00 |
| 68 | 6/4/2026 | D&F: LTR [109] SUPP WITHDRAW MOTION [105] | 0.3 | $180.00 |
| 69 | 6/16/2026 | COMMUNICATIONS W/ PL: FINAL ORDER | 1.0 | $600.00 |
| 70 | 6/16/2026 | R&A; FINAL ORDER/OPINION [110] | 1.0 | $600.00 |
| 71 | 6/17/2026 | COMMUNICATION W/ PL: CONFLICT WAIVER | 0.5 | $300.00 |
| 72 | 6/18/2026 | COMMUNICATION W/ PL: DEMAND LTR | 0.5 | $300.00 |
| 73 | 6/18/2026 | LR RF, DRAFT/SUBMIT DEMAND LRT TO ATY | 1.0 | $600.00 |
| 74 | 6/19/2026 | LR: ATY RATES SURVEYS | 1.5 | $900.00 |
| 75 | 6/19/2026 | LR; PREVAILING PARTY FEE CASE LAW | 3.5 | $2,100.00 |
| 76 | 6/19/2026 | LR; CASE LAW PROCEDURAL PREVAILING PARTY | 3.5 | $2,100.00 |
| 77 | 6/19/2026 | MORE COMMUNICATIONS W/ PL: DEMAND LTR | 0.5 | $300.00 |

| | | | | |
|---|---|---|---|---|
| 78 | 6/20/2026 | LR, RF, DRAFT/SUBMIT SUPP DEMAND LTR TO ATY | 0.5 | $300.00 |
| 79 | 6/22/2026 | COMMUNICATIONS / CORCHNOY ESQ, RATE AFF | 0.5 | $300.00 |
| 80 | 6/23/2026 | EMAILS W/ ATY (DEMAND LTR) | 0.2 | $120.00 |
| 81 | 6/24/2026 | R&A; ATY DEMAND REPLY, CONFER W/ PL | 0.5 | $300.00 |
| 82 | 6/24/2026 | LR, RF, DRAFT/SUBMIT 3D DEMAND LTR TO ATY | 0.5 | $300.00 |
| 83 | 6/25/2026 | COMMUNICATIONS W/ HOLLAND ESQ, RATE AFF | 0.5 | $300.00 |
| 84 | 6/29/2026 | LR, RF, 1ST DRAFT FEE MOTION | 3.5 | $2,100.00 |
| 85 | 6/30/2026 | LR, RF, D&F: FEE MOTION | 2.5 | $1,500.00 |
| 86 | 7/21/2026 | R&A DF FEE MOTION OPP | 1.5 | $900.00 |
| 87 | 7/27/2026 | LR, RD, D&F: FEE MOTION OPP REPLY | 3.0 | $1,800.00 |
| 88 | 8/11/2026 | D.E. 114 | 5.0 | $3,000.00 |
| **#** | **Date** | **Description** | **Time** | **Fee** |
| | | **TOTAL** | **163.3** | **$93,900.00** |